

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| STATE ex rel. JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER INC., | ) ) ) | *Opinion issued February 13, 2019* |
| Relators, | ) ) | |
| v. | ) ) | No. SC96704 |
| THE HONORABLE REX M. BURLISON, | ) ) ) | |
| Respondent. | ) | |
| and | | |
| STATE ex rel. IMERYS TALC AMERICA, INC., | ) ) ) | |
| Relator, | ) ) | |
| v. | ) ) | No. SC96710 |
| THE HONORABLE REX M. BURLISON, | ) ) ) | |
| Respondent. | ) | |

### ORIGINAL PROCEEDING IN PROHIBITION

Johnson & Johnson, Johnson & Johnson Consumer Inc. (collectively, "J&J"), and

Imerys Talc America, Inc. ("Imerys" or, collectively, "Relators") seek writs of

prohibition to prevent the circuit court from taking any further action other than to sever

Michael Blaes' claims from the separate claims made by multiple plaintiffs in the underlying case pending in St. Louis City and to transfer Blaes' claims to St. Louis County, where Blaes' wife was first injured. This Court holds the circuit court abused its discretion in overruling Relators' motions to sever Blaes' claims and transfer them to St. Louis County, where venue is proper. The preliminary writs of prohibition are made permanent.

**Factual and Procedural History**

J&J manufactures and sells personal care products, including body powders containing talc. J&J's corporate headquarters are in New Jersey, and its registered agent is in St. Louis County. Imerys is a Delaware corporation that mines and supplies raw talc for use in J&J products, and its registered agent is in Cole County.

In July 2014, St. Louis city resident Valerie Swann, along with dozens of non-Missouri plaintiffs, filed suit against Relators in St. Louis city alleging they, or their decedents, developed ovarian cancer from using talc-based products J&J manufactured and sold with talc provided by Imerys. The plaintiffs' petition asserted theories of strict liability for failure to warn, negligence, breach of express and implied warranty, civil conspiracy, concert of action, negligent misrepresentation, fraud, and wrongful death. The plaintiffs alleged their separate claims were a direct and proximate result of Relators' negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling and/or sale of the products known as Johnson & Johnson Baby Powder and Shower to Shower.

Relators filed motions to sever and to transfer venue. Relators argued because Swann was the only St. Louis city resident plaintiff, the remaining non-Missouri plaintiffs'

2

claims were joined improperly, and their separate claims should be severed and transferred to St. Louis County, where J&J's registered agent is located, or to their home states. The circuit court overruled the motions, finding all of the plaintiffs' claims were joined properly pursuant to Rule 52.05(a) and severance was not required. The circuit court further found venue was appropriate in St. Louis city because Swann alleged she was first injured there.

Blaes joined the Swann action in May 2016, when he was named as a plaintiff in the first amended petition.[1] Blaes alleged his wife purchased and applied Relators' products in St. Louis County, developed ovarian cancer, and subsequently died. Relators renewed their motions to sever and transfer venue and reincorporated their previous arguments. The circuit court overruled these motions.

The Swann petition was amended twice more. Each time the petition was amended, Relators renewed and reincorporated their objections to joinder and venue. The circuit court overruled all of these motions.

In August 2017, the plaintiffs were granted leave to file a fourth amended petition. Shortly thereafter, this Court issued its opinion in *Barron v. Abbott Laboratories, Inc.*, 529 S.W.3d 795, 797 (Mo. banc 2017). In *Barron*, multiple plaintiffs, many non-Missourians, filed a single claim against Abbott Laboratories, alleging in utero exposure to Depakote, an antiepileptic drug manufactured and marketed by Abbott, caused birth defects. Abbott

---

[1] Blaes initially filed an individual suit against Relators, and other defendants, in St. Louis County in January 2016. The case was removed to federal district court, where it was set for a jury trial. Blaes filed a motion to dismiss the case voluntarily shortly after a different talc-related jury verdict was entered against Relators in St. Louis city. The district court sustained Blaes' motion, noting his case likely would be refiled and consolidated with Swann's petition.

challenged joinder and venue, seeking to sever all of the plaintiffs' individual claims, and the circuit court overruled Abbott's motion. The first non-Missouri plaintiff, whose claim was designated for a separate trial but not severed from the other plaintiffs, received a multi-million-dollar jury verdict. *Id.* at 797-98.

On appeal, Abbott argued the circuit court erred in overruling its pretrial motion to sever and transfer venue of all the separate, individual claims because joinder and venue of the separate claims was improper for the non-Missouri plaintiffs. *Id.* at 798. This Court affirmed the circuit court's judgment. The Court held, even if the circuit court erred in failing to sever or transfer the individual claims, this error did not require reversal because Abbott could not demonstrate prejudice pursuant to Rule 84.13(b). *Id*. at 798-99. The Court surmised, "Perhaps the difficulty in showing prejudice on appeal is why these types of claims are better raised in the pretrial writ context, which requires no showing of prejudice." *Id*. at 799 n.6.

Following the *Barron* decision, the circuit court designated Blaes' claims for a separate trial and Relators renewed their motions to sever and transfer for improper venue. The circuit court overruled Relators' motions. Relators sought writs of prohibition from the court of appeals, which denied relief.

Relators then sought writs of prohibition from this Court arguing venue in St. Louis City is improper and seeking to compel the circuit court to transfer Blaes' separate claims to the proper venue in St. Louis County. On October 13, 2017, this Court issued preliminary writs of prohibition and commanded the circuit court to take no further action

4

in this matter, other than to show cause as to the reasons this writ should not issue, until ordered to do so by this Court.

**Standard of Review**

This Court has jurisdiction to issue original remedial writs. Mo. Const. art. V, sec. 4. "A writ of prohibition is appropriate: (1) to prevent the usurpation of judicial power when a lower court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted." *State ex rel. Strauser v. Martinez*, 416 S.W.3d 798, 801 (Mo. banc 2014). This Court may issue an extraordinary writ to correct improper rulings on motions to sever. *State ex rel. Nixon v. Dally*, 248 S.W.3d 615, 619 (Mo. banc 2008). "It is well-established that this Court accepts the use of an extraordinary writ to correct improper venue decisions of the circuit court before trial and judgment." *State ex rel. Heartland Title Servs., Inc. v. Harrell*, 500 S.W.3d 239, 241 (Mo. banc 2016) (quoting *State ex rel. Kan. City S. Ry. Co. v. Nixon*, 282 S.W.3d 363, 365 (Mo. banc 2009)). This Court may issue a writ directing the circuit court to "transfer a case to the proper venue, particularly when issuance of the writ is necessary to prevent unnecessary, inconvenient and expensive litigation." *Kan. City S. Ry. Co,* 282 S.W.3d at 365.

**Argument**

The central issue in this case is whether permissive joinder of separate claims may extend venue to a county when, absent joinder, venue in that county would not otherwise

be proper for each claim. It cannot and does not. This is evidenced not only by our Court's rules but also nearly 40 years of this Court's precedent.

Relators contend venue in St. Louis city is improper and seek writs prohibiting the circuit court from taking any further action in this case other than severing Blaes' claims and transferring them to the proper venue.[2] In response, Blaes contends venue for his separate and independent claims may be pursued in St. Louis city because his claims are properly joined with other plaintiffs who were alleged to be first injured inside and outside Missouri. Blaes concludes the governing venue statute, § 508.010,[3] does not dictate one specific venue in circumstances in which multiple joined plaintiffs claim their injuries occurred both inside and outside Missouri, causing venue under the facts of this case to be proper in both St. Louis county and city. Therefore, Blaes contends he and the other

---

[2] The dissenting opinions suggest this opinion improperly attempts to reframe the central issue as one of venue when the Relators merely contest joinder seeking severance of Blaes' separate claims relying on the concurring opinion in *Barron v. Abbott Laboratories, Inc.*, 529 S.W.3d 795 (Mo. banc 2017). But they are incorrect. This case is about venue. Relators' writ petitions allege improper venue as to Blaes' separate claims. Petition for Writ of Prohibition at 3, *State ex rel. Johnson & Johnson and Johnson & Johnson Consumer Cos., Inc. v. The Hon. Rex M. Burlison*, SC96704 (October 3, 2017); Petition for Writ of Prohibition at 2, *State ex rel. Imerys Talc America, Inc. v. The Hon. Rex M. Burlison*, SC96710 (October 10, 2017). In addition, Relators' writ petitions claim a writ of prohibition, rather than an appeal, is the appropriate remedy to correct a circuit court that acts when venue is improper, citing the *Barron* majority opinion. Petition for Writ of Prohibition at 8, *Johnson & Johnson*, SC96704 (October 3, 2017); Petition for Writ of Prohibition at 15-16, *Imerys*, SC96710 (October 10, 2017). Because this matter can be resolved based on Relators' improper venue claims, this Court need not decide whether the circuit court abused its discretion in failing to sever Blaes' claims after they were set for a separate trial—as the concurring opinion in *Barron* suggested. 529 S.W.3d at 803 (Wilson, J. concurring) ("Once the trial court has determined that each plaintiff's claims are to be tried separately … the trial court has discretion to deny a subsequent or renewed motion to sever only in the rarest of circumstances.").

[3] All statutory references are to RSMo Supp. 2005 unless otherwise indicated.

plaintiffs are able to choose between the city and the county and control where venue lies. However, this position is contingent on the joinder of Blaes' claims with those of the other plaintiffs and, therefore, conflicts with Rule 51.01 and *State ex rel. Turnbough v. Gaertner*, 589 S.W.2d 290, 292 (Mo. banc 1979), which held joinder cannot be used to expand venue for separate and discrete claims.

In *Turnbough*, the plaintiff brought separate personal injury claims against two defendants in St. Louis city. Venue was proper in the city as to the claim against one defendant, but not for the claim against the other defendant. This Court noted, although Rule 52.05(a) allows "two or more separate causes of action" to be joined in a single petition, Rule 51.01 expressly states the rules of civil procedure, including Rule 52.05(a), "**shall not be construed to extend** or limit the jurisdiction of the Courts of Missouri or **the venue of civil actions therein.**" *Turnbough*, 589 S.W.2d at 291-92 (emphasis added). This Court held venue could not "be established by means of Rule 52.05(a) when it would not have existed without such joinder."[4] *Id*. This Court has repeatedly reaffirmed the

---

[4] Instead of acknowledging this holding, Judge Wilson's dissenting opinion attempts to distinguish *Turnbough* from this case by concluding the defendants in *Turnbough* were not properly joined pursuant to Rule 52.05(a). But this Court presumed joinder was proper in *Turnbough*, specifically holding joinder cannot create venue for any claims, regardless if joinder is proper under Rule 52.05(a). 589 S.W.2d at 291-92. Specifically, *Turnbough* stated:

> This position of respondent is predicated on the proposition that by joining two or more separate causes of action in a single petition pursuant to Rule 52.05(a), venue as to all is created in any county wherein any one of the several defendants resides even though there would not have been venue as to one (or more) of the counts if filed separately in that county. The joinder is said to result in venue as to the counts so joined. We reject this contention.

7

holding in *Turnbough* and reiterated that joinder cannot be used to extend venue to separate claims. *See Heartland*, 500 S.W.3d at 242 n.4 ("Each count must pass venue muster."); *Dally*, 248 S.W.3d at 617 (discussing the bar of permissive joinder as it pertains to venue); *State ex rel. BJC Health Sys. v. Neill*, 121 S.W.3d 528, 530 (Mo. banc 2003) (describing *State ex rel. Allen v. Barker*, 581 S.W.2d 818, 827 (Mo. banc 1979), as "incorrectly stating that 'the question of venue is contingent upon proper joinder'"); *State ex rel. Jinkerson v. Koehr*, 826 S.W.2d 346, 348 (Mo. banc 1992) ("Simply joining the two separate causes of action in a single petition does not create venue over both actions.").[5]

Absent joinder of Blaes' claims to those made by other plaintiffs named in the petition, venue for Blaes' claims is only proper in St. Louis County. Section 508.010.4 provides, "notwithstanding any other provision of law, in all actions in which there is **any count** alleging a tort and in which **the plaintiff was first injured in the state of Missouri**, venue shall be in the **county where the plaintiff was first injured** by the wrongful acts or

---

*Id.*
[5] The dissenting opinions attempt to discount the holding in *Turnbough* by discussing and distinguishing two cases following *Turnbough*—*Jinkerson* and *Dally*. The dissenting opinions correctly note *Jinkerson* found venue to be improper after concluding the separate claims alleged in the case did not arise out of the same transaction or occurrence. *See Jinkerson*, 826 S.W.2d at 348. The dissenting opinions also correctly observe venue was not at issue in *Dally*. *See Dally*, 248 S.W.3d at 617. Notwithstanding these distinctions, *Jinkerson* and *Dally* reaffirmed the central holding in *Turnbough* that joinder of "separate causes of action" cannot establish venue for the joined claims—even when assuming joinder of the separate claims are authorized and proper under Rule 52.05(a). *Turnbough*, 589 S.W.2d at 291-92. This clear and direct holding in *Turnbough*—which has consistently and repeatedly been recited by this Court—provides the basis for this Court's holding today.

8

negligent conduct alleged in the action." (Emphasis added). This plain language of § 508.010.4 establishes proper venue for Blaes' claims in St. Louis County, where his wife was first injured.[6] In every count and every claim brought against Relators by Blaes, Blaes alleges his wife was first injured in St. Louis County. Pursuant to § 508.010.4, venue is only proper in St. Louis County for Blaes' independent, separate claims against Relators, and joinder of his claims in the petition with the other plaintiffs' claims as authorized by Rule 52.05(a) cannot establish venue in St. Louis city or any other county in Missouri.[7] To hold otherwise would mean, contrary to the express provisions of Rule 51.01, venue would "be established by means of Rule 52.05(a) when it would not have existed without such joinder." *Turnbough*, 589 S.W.2d at 292.[8]

---

[6] As noted above, before his claims were joined with the other plaintiffs' claims in this case, Blaes filed his claims individually in St. Louis County as this is the county where he alleges his wife was first injured.

[7] Citing the "any counts" language from § 508.010.4, Judge Wilson's dissenting opinion claims there are "counts" contained in the petition in which "Plaintiff Swann" alleges she was first injured in the St. Louis city. Judge Wilson concludes § 508.010.4 allows for venue in the city. But Judge Wilson puts the cart before the horse. In each of the counts contained in the petition, Blaes alleges his wife was first injured in St. Louis County, and Swann alleges, in each of the same counts, she was first injured in St. Louis city. Therefore, the only way to justify venue in the city for Blaes' independent, separate claims is to allege proper joinder with Swann's claims in each of these counts. Just as the cart cannot lead the horse, joinder cannot control venue.

[8] Judge Wilson's dissenting opinion contends this Court's holding ignores the legislature's long-standing understanding of permissive joinder as set forth in § 507.040.1, from which Rule 52.05(a) is taken "word-for-word." However, Judge Wilson's dissenting opinion fails to recognize *Turnbough* specifically held Rule 52.05(a) "superceded [§] 507.040." *Turnbough*, 589 S.W.2d at 291. For this reason, Rule 52.05(a), not § 507.040.1, governs joinder of plaintiffs' claims in this case, and Rule 51.01 states this rule cannot extend venue for Blaes' claims to the city. Even if § 507.040.1 had not been superceded by Rule 52.05(a), § 507.040.1 must be read in light of the relevant venue statute for this case, § 508.010.4. Section 508.010.4 specifically sets forth the parameters for venue for Blaes'

Unconvincingly, Blaes claims *Turnbough* is no longer valid law, relying on *State ex rel. Kinsey v. Wilkins*, 394 S.W.3d 446 (Mo. App. 2013). In *Kinsey*, the plaintiff was involved in two automobile accidents in two different counties, sustaining injuries to the same parts of his body in the separate accidents. *Id*. at 447-48. The plaintiff brought suit in a single claim against the separate defendants who operated the motor vehicles in the two accidents. *Id*. at 448. In his petition, the plaintiff sought damages for the "indivisible injuries" that first occurred in Greene County where the first accident occurred. *Id*. The court of appeals held venue was proper in Greene County because "[s]ection 508.010.4 confers venue for separate, yet successive automobile accidents occurring in different counties, in the county of first injury." *Id*. at 453.

The court of appeals in *Kinsey* determined venue is only proper where the plaintiff is first injured when the plaintiff sustains successive injuries.[9] The ruling in *Kinsey*,

---

claims "notwithstanding any other provision of law." This Court has held that "notwithstanding any other provision of law" means "no other provision of law can be held in conflict with it." *State ex rel. City of Jennings v. Riley*, 236 S.W.3d 630, 632 (Mo. banc 2007). As a result, § 508.010.4 controls to the extent § 507.040.1 and § 508.010.4 conflict. Section 508.010.4 specifically states "the county where **the plaintiff** was first injured" controls venue, and § 507.040.1 cannot counteract this provision by allowing venue for Blaes' claims to be in any other county other than where Blaes' wife was first injured. (Emphasis added).

[9] The facts in *Kinsey* are remarkably similar to the facts from *State ex rel. Bitting v. Adolf*, 704 S.W.2d 671 (Mo. banc 1986), upon which Judge Wilson's dissenting opinion heavily relies. In *Bitting*, the plaintiff filed suit against two defendants, an individual who caused the plaintiff's injuries from a car accident and the hospital that allegedly caused the plaintiff additional injuries due to malpractice in the treatment of the plaintiff's injuries from the car accident. 704 S.W.2d at 672. Like the defendants in *Kinsey*, the defendants in *Bitting* were "liable jointly and severally for a portion of the plaintiff's damages." *Id*. at 673. If *Bitting* were decided today, § 508.010.4 would control the outcome and the proper venue would be where the plaintiff was first injured. Nonetheless, *Bitting* may provide an

10

however, does not disturb the central holding in *Turnbough* that joinder of separate claims cannot establish venue for the joined claims—even assuming joinder of the separate claims are authorized and proper under Rule 52.05(a). *Turnbough*, 589 S.W.2d at 291-92. Unlike the facts in *Turnbough*, it was the venue statute, § 508.010.4, and not joinder pursuant to Rule 52.05(a), that established venue for the claims in *Kinsey*. *Kinsey*, 394 S.W.3d at 453. Furthermore, the facts in this case are distinguishable from *Kinsey*. It is undisputed Blaes' wife was first injured in St. Louis County, where § 508.010.4 establishes venue, and the only basis for venue in St. Louis city is joinder of Blaes' claims with Swann's individual, separate claims pursuant to Rule 52.05(a). This is a clear and direct violation of the express language of Rule 51.01 and the holding in *Turnbough* and is very different from the facts and circumstances found in *Kinsey*.

Blaes also attempts to distinguish *Turnbough* because the separate claims joined in this case were brought by multiple plaintiffs against a single defendant rather than a single plaintiff against multiple defendants. While *Turnbough* involved the joinder of separate claims brought by a single plaintiff against multiple defendants, it is the joinder of separate claims, not parties, that cannot extend or create venue. *Turnbough,* 589 S.W.2d at 292. The holding in *Turnbough* is premised on Rule 51.01, which states the rules of civil procedure shall not be construed to extend "the venue of civil actions therein." *Id*. Whether joinder is justified by Rule 52.05 (parties), Rule 55.06 (claims), or any other court rule,

---

exception to the holding in *Turnbough*. However, this Court need not reach this hypothetical situation because Blaes is not jointly and severally liable with the other plaintiffs but rather has independent, separate and stand-alone claims against Relators.

Rule 51.01 prohibits extending venue, beyond statutory venue constraints, pursuant to any of the Missouri Rules of Civil Procedure, and it does not matter if the separate claims were brought by multiple plaintiffs against a single defendant, a single plaintiff against multiple defendants, or even a single plaintiff against a single defendant.[10]

What Rule 51.01 and the holding in *Turnbough* make clear is joinder of Blaes' claims with the other claims alleged in the petition cannot extend venue to a county where Blaes' claims could not otherwise be brought and pursued.[11] Because Blaes' wife was first

---

[10] Judge Draper's dissenting opinion contends venue for Blaes' separate and independent claims may be pursued in St. Louis city because Blaes' claims are properly joined with other plaintiffs who were alleged to be first injured inside and outside of Missouri. Judge Draper's dissenting opinion concludes the governing venue statute, § 508.010, does not identify the proper venue for this "unique scenario" in which multiple joined plaintiffs claim their injuries first occurred both inside and outside of Missouri, causing venue to be proper in any county in Missouri. However, this position is contingent on the joinder of Blaes' claims with those of the other plaintiffs, and, therefore, conflicts with Rule 51.01 and *Turnbough*, which held joinder cannot be used to expand venue for separate and discrete claims.

[11] Judge Wilson's dissenting opinion repeatedly but incorrectly suggests this holding is a "sudden and unexpected" departure from the existing law on venue. As set forth above, this Court's holding in *Turnbough* has been repeatedly affirmed by this Court's precedent during the past 40 years. The court of appeals has also relied on *Turnbough*'s holding. *See Polk Cnty Bank v. Spitz*, 690 S.W. 192, 194 (Mo. App. 1985); *Mercantile Trust Co. Nat. Ass'n v. Anderson*, 611 S.W.2d 548, 554 (Mo. App. 1981). In addition, circuit courts have cited *Turnbough* when deciding issues of venue. One distinguished circuit court jurist put it best, stating:

> As the Southern District noted in *Polk County Bank v. Spitz*, 690 S.W.2d 192, 194 (Mo. App. 1985), "[J]oinder of two or more separate causes of action in a single petition does not create venue as to both causes," c*iting Turnbough, supra*.

> Although the law governing venue has changed since 2005, the principle that venue for each claim must lie in the forum county remains undisturbed. Stated another way, venue for Plaintiff's defamation claim will not serve as a basis for venue in his discharge claim, because predicating venue for the discharge claims on the venue

12

injured in St. Louis County, § 508.010.4 dictates the proper venue for Blaes' claims is St. Louis County. The city of St. Louis is an improper venue for Blaes to pursue his claims. "[W]hen venue is improper, the circuit court has a 'ministerial duty' to transfer the case to a county where venue is proper." *Heartland*, 500 S.W.3d at 243.

For these reasons, the preliminary writs of prohibition are made permanent and the circuit court shall take no further action other than severing Blaes' claims and transferring them to the proper venue in St. Louis County.

_____
W. Brent Powell, Judge

Russell, Breckenridge and Stith, JJ., concur;
Draper, J., dissents in separate opinion filed;
Wilson, J., dissents in separate opinion filed;
Fischer, C.J., concurs in opinion of Wilson, J

---

of the defamation claim would amount to using the joinder rule to extend venue, which is prohibited by Rule 51.01 (Supreme Court Rules "shall not be construed to extend or limit the jurisdiction of the courts of Missouri, or the venue of civil actions therein"). Hence, this Court must examine those claims separately.

*Eckersley v. Blunt*, No. 0816-CV00118, 2008 WL 6551161, at *2-3 (Mo. Cir. Ct. Apr. 4, 2008) (Manners, J.) (quoting *Polk Cnty. Bank v. Spitz*, 690 S.W.2d 192, 194 (Mo. App. 1985) (citing *State ex rel, Turnbough v. Gaertner*, 589 S.W.2d 290 (Mo. banc 1979)). While there may be valid policy reasons related to judicial economy and convenience to allow joinder to control venue, such a decision would be unsupportable unless this Court is willing to overturn the holding in *Turnbough* and its progeny, ignore Rule 51.01, and disregard the legislature's venue statutes. Furthermore, venue goes uncontested by litigants in many cases because the parties seek the economy and convenience of having all their claims tried together.

13



# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. JOHNSON & JOHNSON and )
JOHNSON & JOHNSON CONSUMER )
COMPANIES INC., )
                      )
               Relators, )
                      )
v.                         )       No. SC96704
                      )
THE HONORABLE REX M. BURLISON, )
                      )
              Respondent. )

and

STATE ex rel. IMERYS TALC AMERICA, )
INC., )
                      )
              Relator, )
                      )
v.                         )       No. SC96710
                      )
THE HONORABLE REX M. BURLISON, )
                      )
              Respondent. )

## DISSENTING OPINION

I respectfully dissent. Rather than resolve the issues presented, I believe the principal opinion wholly circumvents the procedural posture of these cases and disregards the actual arguments Relators presented to issue a venue ruling. Because I believe the

designation of Michael Blaes' (hereinafter, "Blaes") claims for a separate trial did not constitute a severance requiring reevaluation of joinder and venue prior to his separate trial, contrary to the concurrence in *Barron v. Abbott Laboratories, Inc.*, 529 S.W.3d 795 (Mo. banc 2017), I would hold the circuit court did not abuse its discretion in overruling Relators' motions to sever Blaes' claims.

Further, I believe the principal opinion relies on caselaw that is inapposite and predates the 2005 venue amendments to justify its reach to issue a venue holding. Hence, I would hold joinder of Blaes' claims was proper when sought and venue was proper in St. Louis City.

### Application of the *Barron* Concurrence

To present venue as the central issue in this case, the principal opinion necessarily disregards the procedural posture and legal premises underlying Relators' writ petitions, which reflected a wholesale reliance on the *Barron* concurrence. The *Barron* concurrence highlighted distinctions between motions to sever and transfer venue submitted at the outset of the litigation and motions filed after the circuit court determines each plaintiff's claims are to be tried separately. *Barron*, 529 S.W.3d at 803. The concurring opinion initially found the plaintiffs' claims were joined properly and venue was proper in St. Louis City because four plaintiffs alleged they were first injured there. *Id*. at 802. However, the concurring opinion then explained, "Once the trial court has determined that each plaintiff's claims are to be tried separately … the trial court necessarily has decided there are no further gains in efficiency or expeditiousness to be had from the joinder authorized by Rule 52.05(a)." *Id*. The concurring opinion stated, once the circuit court sets an

2

individual plaintiff's case for trial, it has "discretion to deny a subsequent or renewed motion to sever only in the rarest of circumstances." *Id*. The concurring opinion posited, "A decision to sever each plaintiff's claims in a multi-plaintiff case 'removes' a plaintiff for purposes of section 508.012 and, therefore, doing so will require the trial court (on application of a party) to determine the proper venue for the various actions resulting from that severance." *Id*.

Following this Court's decision in *Barron*, the circuit court designated Blaes' claims for a separate trial. Relators filed renewed motions to sever and transfer for improper venue, relying *solely* on the *Barron* concurrence to support their arguments.[1] J&J acknowledged at the hearing on its motion to sever it never requested to sever the other plaintiffs whose claims were designated for a separate trial. When the circuit court questioned J&J about this change in approach for Blaes' claims, J&J stated it was following the *Barron* concurrence.

In its most recent writ petitions before this Court, Relators argued even if joinder and venue were appropriate when Blaes' claims were included in the first amended petition, the *Barron* concurrence compels the circuit court to sever Blaes' claims and transfer them to St. Louis County after designating his claims for a separate trial. To that end, Relators argued the circuit court's refusal to sever Blaes' claims and transfer them to

---

[1] That the *Barron* concurrence served as the sole legal authority is borne out by Relators' most recent severance motions, which raised exactly the same arguments as the prior four motions that were overruled. Relators also sought writ relief from this Court in September 2017, raising similar arguments as raised herein. This Court denied Relators' petition. *State ex rel. Johnson & Johnson, et al. v. Burlison*, SC96704. Hence, there can be no doubt the *Barron* concurrence is the sole impetus for the current filing.

3

St. Louis County constituted an abuse of discretion and violated section 508.010[2] and section 508.012 because venue is proper in St. Louis County, where Blaes' decedent was first injured.

The principal opinion does not devote a single word to the *Barron* concurrence and steadfastly ignores Relators' legal arguments. The principal opinion's reach to bypass the *Barron* concurrence quagmire is understandable. Parsing the errant roadmap provided by the *Barron* concurrence makes it virtually impossible for the principal opinion to reach its result for several reasons.

First, by acknowledging Relators' actual legal arguments grounded in the *Barron* concurrence, the principal opinion would have to determine whether a concurring opinion's analysis should be adopted as a majority view. "Except on matters showing a concurrence of a majority of the members of the court no rule or precedent binding in subsequent cases was thereby established." *Canary Taxicab Co. v. Terminal Ry. Ass'n of St. Louis*, 294 S.W. 88, 92 (Mo. banc 1927). Second, the principal opinion would have to determine whether the *Barron* concurrence's analysis is legally sound. I believe the *Barron* concurrence unnecessarily complicated an already complex and evolving area of the law, as will be discussed below. Relators' claims are before this Court only because they relied on the *Barron* concurrence as a basis to relitigate severance, joinder, and venue for the ***fifth*** time, hence fomenting these claims. Finally, assuming *arguendo*, the principal opinion adopted the *Barron* concurrence analysis and determined the analysis was legally sound, an

---

[2] All statutory references are to RSMo Supp. 2005 unless otherwise indicated.

4

examination of Relators' motion demonstrates they failed to plead sufficient facts even to be entitled to relief as posited by the *Barron* concurrence.

Because all three of these hurdles are insurmountable, one can understand the principal opinion's preference to take no notice of the pleadings as presented and focus instead on venue. However, because this Court should not act as an advocate for the parties and, instead, address the issues as presented, a discussion of the actual arguments Relators raise as they relate to the *Barron* concurrence is warranted.

*The Barron Concurrence, Designation for Separate Trial, and Severance*

Relators' arguments are based on the premise that, once Blaes' claims were designated for a separate trial, his case was severed for all practical purposes because there are "no further gains in efficiency or expeditiousness to be had" as stated in the *Barron* concurrence. *Barron*, 529 S.W.3d at 803. The distinction between designating a claim for separate trial from severing a claim refutes this argument.

Rule 66.02 provides, "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, … or of any separate issue or of any number of claims, … or issues." *See also* Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."). "Separate trials under Rule 66.02 remain part of a single legal action with a single judgment to be entered thereon." *Distefano v. Quigley*, 230 S.W.3d 647, 648 (Mo. App. S.D. 2007) (per curiam). Similarly,

5

Rule 52.05(b) empowers the circuit court to "order separate trials or make other orders to prevent delay or prejudice" after the parties have been joined.

"Any claim against a party may be severed and proceeded with separately." Rule 52.06; *see also* Fed. R. Civ. P. 21 ("The court may also sever any claim against a party."). "Rule 52.06 severance creates totally separate claims to be pursued in independent actions and resulting in completely separate judgments." *Distefano*, 230 S.W.3d at 648. Appellate courts review the circuit court's ruling on a motion to sever for an abuse of discretion. *Bhagvandoss v. Beiersdorf, Inc.*, 723 S.W.2d 392, 395 (Mo. banc 1987).

Hence, designating a claim for separate trial is distinguishable from severance, despite these terms being used interchangeably. *Distefano*, 230 S.W.3d at 648 (noting "potential confusion when courts use the term 'severance' when they simply are ordering separate trials"); *see also* 16 Martha Charepoo, *Missouri Practice Series Civil Rules Practice* §66.02:2 (2017) ("Practitioners should note the distinction between an order for separate trial pursuant to Rule 66.02 and an order of severance of claims pursuant to [Rule] 52.06."). "Separate trials of claims originally sued upon together usually will result in the entry of one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently." 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2387 (3d ed. 2008).[3] Thus, the circuit

---

[3] Although *Distefano* is the only Missouri case to discuss the distinction between separate trials and severance, this view is consistent with federal court interpretations of the same language in Federal Rules 21 and 42(b), which mirror Rules 52.06 and 66.02(b). When "the Missouri and federal rules are essentially the same, federal precedents constitute

court's order designating a separate trial is not synonymous with a decision to sever because the petition and parties remain intact, even if a separate trial's judgment is certified for appeal.

Relators rely on the procedural posture of prior separate trials ordered from Swann's petition and other talc-related litigation pending in St. Louis City to advance the argument here that Blaes' separate trial effectively functions as a severance. However, Blaes' claims have not been presented at trial. There is no way to know at this juncture whether either party will seek a Rule 74.01(b) certification after a verdict is rendered or whether the circuit court will grant such a request. It would be inappropriate to speculate whether the claims resolved at Blaes' trial would otherwise impact the other plaintiffs, potentially precluding a Rule 74.01(b) certification.

Nor should this Court grant extraordinary relief based on Relators' speculative argument the circuit court intends to try each individual plaintiff's claims seriatim, which is not borne out by the record. The record refutes the notion the circuit court had "an established practice of ordering separate trials of individual claims." At a pretrial hearing held in May 2016, the circuit court was cognizant that "it's incumbent upon us to try to

---

persuasive, although not binding, authority." *Hemme v. Bharti*, 183 S.W.3d 593, 597 (Mo. banc 2006) (quoting *Joel Bianco Kawasaki Plus v. Meramec Valley Bank*, 81 S.W.3d 528, 532-33 (Mo. banc 2002)). Several federal cases analyze the distinction between designation for separate trial and severance, consistent with *Distefano*. *See Reinholdson v. Minnesota*, 346 F.3d 847, 850 (8th Cir. 2003); *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983); *Acevedo-Garcia v. Monroig*, 351 F.3d 547, 559 (1st Cir. 2003); *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993); *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1122 n.5 (7th Cir. 1999); and *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1519 n.8 (10th Cir. 1991).

figure out if we can try more than one [claim] at a time," but "we haven't parsed this down sufficiently to determine whether or not we've got enough sufficient categories of similarity that it would be fair to try like that." The circuit court also expressed the desire to "start a process to start looking at whether or not we can get into multi plaintiffs here." Moreover, in May 2017, the circuit court demonstrated it was amenable to trying multiple plaintiffs' claims in a single trial when it ordered Blaes, along with two other plaintiffs, to have their claims designated for a single, separate trial, which commenced in June 2017.

Relators maintain section 508.012 requires venue to be reevaluated once a claim is designated for a separate trial and a party files a motion to sever. This is not so. Rule 52.06 provides, "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." *See also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."). When parties are added or removed from a petition, section 508.012 contemplates the potential for reevaluating whether venue is proper.[4] The *Barron* concurrence stated, "A decision to *sever* each plaintiff's claims in a multi-plaintiff case 'removes' a plaintiff for purposes of section 508.012 and, therefore, doing so will require

---

[4] Section 508.012 states, "At any time prior to the commencement of a trial, if a plaintiff or defendant, including a third-party plaintiff or defendant, is either added or removed from a petition filed in any court in the state of Missouri which would have, if originally added or removed to the initial petition, altered the determination of venue under section 508.010, then the judge shall upon application of any party transfer the case to a proper forum under section 476.410."

8

the trial court (on application of a party) to determine the proper venue for the various actions resulting from that severance." *Barron*, 529 S.W.3d at 803 (emphasis added).

This language, positing that interpretation, does not aid Relators' argument because designating Blaes' claims for separate trial did not result in a severance, as discussed previously. Had Blaes' claims actually been severed, it may well have resulted in an independent action, requiring a reevaluation of venue pursuant to section 508.012. However, designating Blaes' claims for a separate trial keeps the petition and parties intact, obviating the need to reevaluate venue. Moreover, the *Barron* concurrence did not cite— nor have I found—any Missouri cases equating designation of a plaintiff's claim for separate trial as "removing" or "dropping" that plaintiff from the pending cause of action. Hence, section 508.012 does not apply to the pending action and is not helpful.

*Insufficient Pleadings*

Even if Relators properly relied on the *Barron* concurrence as binding authority, its mere citation to such does not demonstrate Relators are entitled to relief. The *Barron* concurrence posits at least two elements a party must demonstrate to have a renewed severance motion sustained. First, the circuit court must decide to try each plaintiff's claims separately. As discussed previously, the record refutes this element because Blaes' claims were joined originally with two other plaintiffs for a separate trial in June 2017 and the circuit court made statements on the record about the necessity to try multiple plaintiffs' claims in a single trial. Second, Relators must demonstrate the goals of efficiency and expeditiousness underlying Rule 52.05(a) have been exhausted by the designation of Blaes' claims for a separate trial. Relators have failed to allege or prove how the efficiencies from

9

joinder have been exhausted. As stated previously, it is purely speculative to assume any party will seek Rule 74.01(b) certification or will not resolve issues common to other plaintiffs awaiting trial. Based on the foregoing, I would hold the circuit court did not abuse its discretion in overruling Relators' motions for severance.

## Joinder and Venue

Because I believe the *Barron* concurrence does not constitute controlling Missouri law and no severance occurred in this case, the circuit court was not required to reevaluate venue when it designated Blaes' claims for a separate trial. However, I am compelled to address the principal opinion's analysis regarding joinder and venue because its reliance on this Court's "nearly 40 years" of precedent rests upon cases that contain distinguishable facts and predate the 2005 amendments, calling into question their applicability here.[5]

Rule 52.05(a), the permissive joinder rule, provides in pertinent part:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.

This rule's purpose is "to promote judicial economy, expedite final disposition of litigation and prevent inconsistent results due to multiple separate lawsuits." *State ex rel. Farmers Ins. Co., Inc. v. Murphy*, 518 S.W.2d 655, 662 (Mo. banc 1975). Courts interpret this rule liberally. *Id*.

---

[5] Notably, J&J asserted during oral argument this Court need not discuss the propriety of the initial joinder or venue to issue a writ; instead, J&J urged this Court to focus on the effect of the severance when making its decision. The principal opinion utterly disregards this argument and essentially becomes an advocate for J&J by reframing its argument in a vastly more favorable light to ensure the outcome it wished to reach.

10

The plaintiffs' petition demonstrated a series of occurrences common to all plaintiffs by alleging use of J&J personal body powders, which contained talc mined and supplied by Imerys, and which caused the plaintiffs or their decedents to develop ovarian cancer. The petition alleged Relators were negligent in the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling and/or sale of these products, and all plaintiffs suffered damages as a result. These claims present at least one common question of law or fact that will arise during the action. Joinder of the plaintiffs' claims against Relators was proper under Rule 52.05(a).

Despite proper joinder, the principal opinion contends the proper venue for Blaes' claim is St. Louis County, the location where Blaes' decedent was first injured. I believe section 508.010 allows two possible appropriate venues.

Section 508.010.4, states in pertinent part:

Notwithstanding any other provision of law, in all actions in which there is any count alleging a tort and in which the plaintiff was first injured in the state of Missouri, venue shall be in the county where the plaintiff was first injured by the wrongful acts or negligent conduct alleged in the action.

Section 508.010.5(1) states:

Notwithstanding any other provision of law, in all actions in which there is any count alleging a tort and in which the plaintiff was first injured outside the state of Missouri, venue shall be determined as follows:

If the defendant is a corporation, then venue shall be in any county where a defendant corporation's registered agent is located or, if the plaintiff's principal place of residence was in the state of Missouri on the date the plaintiff was first injured, then venue may be in the county of the plaintiff's principal place of residence on the date the plaintiff was first injured;

11

Section 508.010.4 requires the petition to allege a tort and the plaintiffs[6] were first injured in Missouri. The plaintiffs' petition alleged multiple tort claims, and Swann alleged she was first injured in St. Louis City. Because Blaes' claims were joined properly under Rule 52.05(a), he alleges St. Louis City was the proper venue for this action when it was instituted given the averment Swann was first injured in St. Louis City.

Relators rely on section 508.010.5 and argue, regardless of whether joinder was proper at the outset of the litigation, when examining Blaes' claims, his decedent was first injured in St. Louis County, making it the proper venue for his claims. Relators maintain the liberal interpretation of the joinder rule must be reconciled with Rule 51.01, which explicitly prohibits the rules of civil procedure from being "construed to extend or limit jurisdiction of the courts of Missouri, or the venue of civil actions therein." *See also State ex rel. Turnbough v. Gaertner*, 589 S.W.2d 290, 292 (Mo. banc 1979). Rule 51.01 merely recognizes the initial venue in which a suit must be commenced is determined solely by statute. *State ex rel. Lebanon Sch. Dist. R-III v. Winfrey*, 183 S.W.3d 232, 235 (Mo. banc 2006).

When analyzing venue, the legal authority on which the principal opinion relies is distinguished factually because each case cited involved a plaintiff attempting to sue

---

[6] "We are admonished by statute to so construe statutory words importing the singular number as to include the plural (several) 'unless it be otherwise specially provided, or unless there be something in the subject or context repugnant to such construction.'" *State ex rel. BJC Health Sys. v. Neill*, 121 S.W.3d 528, 530 (Mo. banc 2003) (quoting *State ex inf. Gentry v. Long-Bell Lumber Co.*, 12 S.W.2d 64, 80 (Mo. banc 1928) (applying this concept when construing the nonprofit corporation venue statute and holding the word "corporation" includes the plural "corporations")); *see also* section 1.030.2, RSMo 2000.

multiple defendants presumably under theories of common liability for indivisible injuries arising from multiple automobile accidents. For example, in *State ex rel. Jinkerson v. Koehr*, 826 S.W.2d 346 (Mo. banc 1992), this Court had to resolve what effect permissive joinder had on venue when the plaintiffs, two members of the same family, brought a single lawsuit to recover damages from multiple defendants involved in separate, successive automobile accidents, occurring in different counties. *Jinkerson*, 826 S.W.2d at 348. This Court held venue was improper as to the defendant involved in the first accident because the first accident did not occur in the same venue in which the plaintiffs filed their suit. *Id.* at 348. More importantly, this Court explained:

> Because there is no common liability among the defendants, the [plaintiffs] should not be allowed to join the two accidents in one petition despite the language of Rule 52.05(a) regarding permissive joinder. Rule 52.05(a) provides that '[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrences or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.' The two accidents alleged in the [plaintiffs'] petition did not arise out of the same transaction or occurrence. Each defendant is responsible for the injuries caused in the accident in which he or she was involved. Simply joining the two separate causes of action in a single petition does not create venue over both actions. Therefore, the [plaintiffs] must establish venue for each cause of action independently.

*Id.* (citation omitted).

The reliance on *Jinkerson*'s isolated statements—"Simply joining the two separate causes of action in a single petition does not create venue over both actions" and "the [plaintiffs] must establish venue for each cause of action independently"—must be read within context of this Court's holding. This Court explicitly and only found joinder was improper in *Jinkerson* because the two accidents did not arise out of the same transaction

13

or occurrence. Hence, because the defendants should not have been joined under Rule 52.05(a), the *Jinkerson* plaintiffs were required to establish venue for each cause of action independently.[7]

The principal opinion also inappropriately relies on *State ex rel. Nixon v. Dally*, 248 S.W.3d 615 (Mo. banc 2008), for its discussion of *Jinkerson* barring permissive joinder as it pertains to venue. Reliance on this analysis is inapposite because this Court specifically stated, "It is important to note venue is not at issue in the present case." *Id.* at 617. Further, a careful reading of this Court's discussion calls into question "whether venue in the *Jinkerson* situation would be correct under the 2005 amended venue statute that specifies that venue is proper in the county where the 'first injury' occurred." *Id.*

Professor David Achtenberg echoed this concern in his law review article analyzing the 2005 amendments to the venue statute, finding, "On its face, [section 508.010] does not seem to indicate how these [venue] rules apply in actions in which some plaintiffs are first injured within the state and some outside it." David Jacks Achtenberg, *Venue in Missouri After Tort Reform*, 75 UMKC L. Rev. 593, 620 (2007). Professor Achtenberg noted any "discussion of venue in multiple party cases is subject to an important caveat: it assumes that the parties have been properly joined." *Id*. at 623. "In cases in which joinder is improper under Rule 52.05 (because the cases by or against multiple parties do not arise out of the same transaction or share no common questions), … *Jinkerson* … would

---

[7] Similarly, the principal opinion's reliance on *State ex rel. Heartland Title Services v. Harrell,* 500 S.W.3d 239, 242 n.4 (Mo. banc 2016), echoing the same isolated statement from *Jinkerson* that "each count must pass venue muster," is inaccurate and unpersuasive as applied in this case.

14

continue to suggest that the proper remedy is to sever the claims under Rule 52.06 and to transfer any claims for which venue would not be proper." *Id*. However, Professor Achtenberg aptly predicted, "the Court will face the problem of whether there is any constraining principal other than the joinder rules when venue of one plaintiff's claim is predicated on the principal place of residence of a co-plaintiff." *Id*. at 624. Professor Achtenberg noted, "The concept of common or joint liability cannot provide such a constraint since it describes the liability of multiple defendants to a single plaintiff rather than the rights of multiple plaintiffs against one or more defendants." *Id*. at 624, n.197.

In this case, a single cause of action contains multiple, properly joined plaintiffs bringing claims raising common questions of fact and law against one or more defendants. The principal opinion does not dispute Blaes' claims were joined properly with the Swann petition pursuant to Rule 52.05(a). Hence, reliance on pre-2005 amendment cases—with distinguishable facts and isolated statements taken out of context—does not resolve the actual question of where venue lies for multiple, properly joined plaintiffs, when some plaintiffs are first injured in Missouri and some are first injured outside of Missouri.

Likewise, section 508.010 does not resolve this question. Section 508.010.4 identifies the proper venue for plaintiffs first injured inside Missouri. Section 508.010.5 identifies the proper venue for plaintiffs first injured outside of Missouri. Both provisions contain the prefatory language, "Notwithstanding any other provision of law …." In *State ex rel. City of Jennings v. Riley*, 236 S.W.3d 630, 632 (Mo. banc 2007), this Court explained the significance of this language:

15

> [T]o say that a statute applies 'notwithstanding any other provision of the law' is to say that no other provisions of law can be held in conflict with it. Indeed, the 'Notwithstanding' clause does not create a conflict, but eliminates the conflict that would have occurred in the absence of the clause. A conflict would be present, then, only if both statutes included a prefatory 'Notwithstanding' clause or if neither statute included such a clause.

*See also State ex rel. Kinsey v. Wilkins*, 394 S.W.3d 446, 453 (Mo. App. E.D. 2013).

While the "notwithstanding" clauses of these provisions direct this Court to ignore the other subsection, I believe neither subsection identifies the proper venue under this unique scenario. Hence, as this Court explained, "if personal and subject matter jurisdiction are established, venue is proper in any county in Missouri in the absence of an express provision by the General Assembly restricting venue." *Heartland Title Servs.*, 500 S.W.3d at 244. Because Blaes' claims were joined properly with Swann's petition and section 508.010 does not identify the proper venue for a single cause of action containing multiple plaintiffs injured inside and outside of Missouri, I believe venue was proper in St. Louis City. Accordingly, I would hold the circuit court did not abuse its discretion in overruling Relators' renewed motions to sever and transfer Blaes' claims and would quash the preliminary writs of prohibition.

 

 

                              _____

                              GEORGE W. DRAPER III, JUDGE

16



# SUPREME COURT OF MISSOURI
## en banc

STATE ex rel. JOHNSON & JOHNSON and
JOHNSON & JOHNSON CONSUMER
INC.,

      Relators,

v.          No. SC96704

THE HONORABLE REX M. BURLISON,

      Respondent.

and

STATE ex rel. IMERYS TALC AMERICA,
INC.,

      Relator,

v.          No. SC96710

THE HONORABLE REX M. BURLISON,

      Respondent.

## DISSENTING OPINION

In *Barron v. Abbott Laboratories, Inc.*, 529 S.W.3d 795 (Mo. banc 2017), this

Court held – for the first time – that actual prejudice resulting from improper venue must

be shown before a defendant is entitled to relief on appeal. This was a sudden, unexpected, and – in my view – unjustified turn in venue jurisprudence.

Today, the Court announces a second sudden, unexpected, and – in my view – unjustified detour in venue law. For the first time, the Court holds that no plaintiff or claim can be joined with any other plaintiff or claim unless venue can be established independently for each claim. In the future, numerous claims that previously could have been filed together in one action − and in one venue − must now be filed separately, wasting judicial resources and the time and money of all parties involved. The only support for this sudden and expected change in the law offered in the principal opinion is cases dealing with the joinder of defendants when a single plaintiff was involved in successive and unrelated car accidents. Without explanation, the principal opinion extends these wholly irrelevant decisions to all cases, including cases dealing with the joinder of plaintiffs who all are asserting substantially similar claims against the same defendants. For the reasons set forth below, I respectfully dissent and would quash the preliminary writs.

This is not an unusual or complicated case. Each of the various plaintiff's claims were properly joined in a single action under Rule 52.05(a) because these plaintiffs "assert [a] right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and … [a] question of law or fact common to all of them will arise in the action." There is no serious dispute over whether the criteria of Rule 52.05(a) were satisfied in this multi-plaintiff action.

2

Venue in St. Louis City is proper for this action under section 508.010.4[1] which provides:

> Notwithstanding any other provision of law, in all actions in which there is any count alleging a tort and in which the plaintiff was first injured in the state of Missouri, venue shall be in the county where the plaintiff was first injured by the wrongful acts or negligent conduct alleged in the action.

The language in this statute is clear and unambiguous, and it reflects the legislature's understanding that an "action" can – and usually will – include many "counts." This is true particularly where – as here – an "action" is brought by multiple plaintiffs with claims "arising out of the same … series of transactions or occurrences" and raising at least one "question of law or fact common to all of them" under Rule 52.05(a). If the legislature had meant to require every "count" in an "action" to separately establish the chosen venue as proper, it could and would have said so. Instead, it said the opposite: venue is proper over an entire "action" under section 508.010.4 so long as there is "any count" in that "action" alleging a tort in which the plaintiff in that count was first injured in that county.

Accordingly, under section 508.010.4, the only question is whether this multi-plaintiff "action" contains "any count alleging a tort … in which the plaintiff was first injured in the state of Missouri." § 508.010.4. If so, venue is proper in the county in which the plaintiff in that count was first injured. Here, Plaintiff Swann asserts at least one count in which she alleges a tort in which she was first injured in Missouri. Under the plain language of section 508.010.4, therefore,

---

[1] All statutory references are to RSMo Supp. 2005 unless otherwise indicated.

3

venue for the entire "action" – not just for that "count" – is proper where Plaintiff Swann was first injured, i.e., in St. Louis City. Unless and until the legislature amends section 508.010.4, this result is compelled by that section and this Court has no business imposing any outcome other than the one the legislature's language envisions.

The principal opinion ignores the plain language of section 508.010.4 and holds, for the first time, that properly joined plaintiffs under the first sentence of Rule 52.05(a) nevertheless must independently establish venue for each of their joined claims. This is no small change. Going forward, practically speaking, tort plaintiffs will be able to join their claims in a single lawsuit with other plaintiffs asserting similar claims against the same defendants only if all plaintiffs were first injured in the same county. But the changes will not stop there. For non-tort suits, or for suits involving tort and non-tort claims, both single and multiple plaintiff cases cannot be filed against multiple defendants in a venue unless that venue is proper for each claim against each defendant. Finally, notwithstanding Rule 55.06,[2] the principal opinion's holding also means a single plaintiff will no longer be able to join together two (or more) claims against a single defendant unless those two separate claims could have been filed independently in the same venue. That this creates a conflict with prior cases, *see, e.g., State ex rel. Ormerod v. Hamilton*, 130 S.W.3d 571, 573 (Mo. banc 2004) ("Because Rule 55.06(a) allows

---

[2] Rule 55.06(a) provides, "A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim may join, either as independent or as alternate claims, as many claims, legal or equitable, as the party has against an opposing party."

4

joinder of tort and contract claims, and because there is only one defendant, venue with respect to either the tort or contract claims would be appropriate to the remaining claims joined."), seems not to deter the result reached in the principal opinion.

What compels the principal opinion to wreak such havoc? First, running *sub silentio* throughout the principal opinion is the suggestion that this Court's Rule 52.05(a) somehow was intended to circumvent the legislature's prerogative to enact venue statutes. This suggestion is incorrect. Rule 52.05(a) provides:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrences or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities.

The language of this rule is taken, ***word for word***, from section 507.040.1, RSMo 2000, which for more than 75 years has provided:

> All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their

5

respective rights to relief, and against one or more defendants according to their respective liabilities.

Accordingly, there is no tug-of-war between Rule 52.05(a) and section 507.040.1 that must, under Rule 51.01, be settled in favor of the legislature's determination of the proper venue. Instead, section 508.010.4 – like all venue statutes – must be read in light of the legislature's long-standing understanding of permissive joinder as set forth in section 507.040.1 and, now, Rule 52.05(a).

This mistake has been made before, in different and far less dramatic circumstances. *See Sperry Corp. v. Corcoran*, 657 S.W.2d 619, 623 (Mo. banc 1983) (Blackmar, J., dissenting) ("What the [principal] opinion overlooks, however, is that Rule 52.05(a) is virtually identical to § 507.040.1, RSMo 1978. ***The authority for joinder, then, comes directly from the legislature and has not been enlarged by court rule***.") (emphasis added). After only three years, however, this Court wisely overruled *Sperry* in *State ex rel. Bitting v. Adolf*, 704 S.W.2d 671, 673 (Mo. banc 1986) (citing Judge Blackmar's dissent in *Sperry* and noting that overruling *Sperry* is "consistent with the general line of cases which treat of the interrelation of the venue statutes and the rules governing joinder of claims"). It may be hoped, if not expected, that today's decision will meet the same fate.

The only cases cited by the principal opinion are inapplicable because they deal with cases in which a single plaintiff improperly joined unrelated claims against unrelated defendants in a venue appropriate for one defendant but not the other. Such cases have no bearing here.

6

First, the principal opinion relies heavily on *State ex rel. Turnbough v. Gaertner*, 589 S.W.2d 290 (Mo. banc 1979). In *Turnbough*, the plaintiff (a resident of Cape Girardeau County) filed suit in St. Louis City against two defendants. *Id.* at 290. Count I sought recovery from the first defendant (a company with its principal place of business in St. Louis City) for injuries sustained in a car accident. *Id.* And Count II sought recovery from the second defendant (also a resident of Cape Girardeau County) for injuries sustained in a car accident that occurred about a week after the first accident. *Id.* Both accidents occurred in Cape Girardeau County. *Id.* at 291. The second defendant filed a motion to sever the two counts and dismiss his count for lack of venue. *Id.* The circuit court overruled the motion, and the first defendant sought a writ of prohibition. *Id.*

The first sentence of Rule 52.05(a), which applies here, did not apply in *Turnbough* because that provision applies only to the joining of multiple plaintiffs in a single action. *Turnbough* did not involve multiple plaintiffs. Similarly, the second sentence of Rule 52.05(a), which deals with the joinder of defendants, could not have applied because there was no claim "asserted against [defendants] jointly, severally, or in the alternative," there was no "right to relief in respect of or arising out of the same transaction, occurrences or series of transactions or occurrences," and there was no "question of law or fact common to all" of the plaintiffs' claims. In short, there is no rule allowing what occurred in *Turnbough*, i.e., allowing a single plaintiff to join in a single action unrelated claims against unrelated defendants. Because the second defendant

7

could not be sued in St. Louis City on either count individually, the Court properly ordered the circuit court to dismiss that defendant. *Turnbough*, 589 S.W.2d at 292.

Here, all parties concede both Relators are subject to suit on Plaintiff Swann's claim in St. Louis City under section 508.010.4. This distinction is dispositive. The legislature has determined it is proper for Relators to defend Swann's claims in St. Louis City, and, once the legislature has designated a county in which venue is proper, it "cannot be overly inconvenient for a defendant to appear in that location." *Willman v. McMillen,* 779 S.W.2d 583, 586 (Mo. banc 1989). Not only does section 508.010.4 show the legislature intended Relators be subject to suit in St. Louis City on Plaintiff Swann's claims, the legislature also intended for Relators to defend there against any other plaintiffs whose claims were properly joined with Plaintiff Swann's claims because section 508.010.4 must be read in light of section 507.040.1, its successor Rule 52.05(a), and more than 75 years of joinder practice allowing multiple plaintiffs to be joined when their claims raise a common question of law or fact arising out the same transaction, occurrence or series of transactions or occurrences.

Second, the principal opinion relies on *State ex rel. Jinkerson v. Koehr*, 826 S.W.2d 346 (Mo. banc 1992). In *Jinkerson*, plaintiffs (residents of St. Louis County) were in an accident with the first defendant (also as resident of St. Louis County) in St. Louis County. *Id*. at 346. Then, almost a year later, plaintiffs were in a second accident with the second defendant (a resident of St. Louis County) in St. Louis City. *Id*. Plaintiffs filed suit in St. Louis City against both defendants, among others. *Id*. The first defendant filed a motion to dismiss, in relevant part, for improper venue. *Id*. at 347. The

8

circuit court overruled the motion, and the first defendant sought a writ of prohibition. *Id*.

This Court found the second sentence of Rule 52.05(a) dealing with the joinder of defendants did not permit joinder in *Jinkerson* because "the two accidents … did not arise out of the same transaction or occurrence," the defendants were "responsible for the injuries caused in the accident in which he or she was involved," and they were not liable jointly, severally, or in the alternative. *Id*. at 348. With no proper joinder of the defendants, the Court followed *Turnbough* and held venue over the first defendant in St. Louis City was not proper. *Id*. at 347. *Jinkerson* does not discuss the provision at issue in this case, which is the first sentence of Rule 52.05(a) dealing with the joinder of plaintiffs. It merely holds that, when defendant joinder is not proper, venue must be established separately for each defendant and claim. *Id*. at 348.

Finally,[3] the principal opinion relies on *State ex rel. Nixon v. Dally*, 248 S.W.3d 615 (Mo. banc 2008), in which a single plaintiff was in two automobile accidents (both in Jasper County) with two different defendants roughly ten months apart. *Id*. at 615-16.

---

[3] The principal opinion also relies on two isolated quotations from *State ex rel. Heartland Title Services v. Harrell*, 500 S.W.3d 239, 242 n.4 (Mo. banc 2016) ("Each count must pass venue muster."), and *State ex rel. BJC Health System v. Neill*, 121 S.W.3d 528, 530 (Mo. banc 2003) (suggesting *State ex rel. Allen v. Barker*, 581 S.W.2d 818 (Mo. banc 1979), "incorrectly stat[es] that 'the question of venue is contingent upon proper joinder'"). Neither statement supports the principal opinion's conclusion. First, the quotation from *Heartland* relies on *Jinkerson*, which, as already explained, does not support the principal opinion's holding. Further, the issue in *Heartland* has nothing to do with the issue in this case. *Heartland*, 500 S.W.3d at 244 (holding "if personal and subject matter jurisdiction are established, venue is proper in any county in Missouri in the absence of an express provision by the General Assembly restricting venue"). Second, *BJC Health System* actually rejects the reasoning of the principal opinion in this case and holds "[v]enue exists for all jointly-liable or commonly-liable defendants where it exists for one defendant." *BJC Health Sys.*, 121 S.W.3d at 530.

9

This Court noted "venue is not at issue" because "the two accidents took place in the same county in which the suit was brought." *Id*. at 617. Instead, the only issue was whether the joinder of two unrelated claims against unrelated defendants was proper. The Court held the second sentence of Rule 52.05(a) permitted the joinder of defendants in that case, distinguishing *Jinkerson*, because the plaintiff alleged joint and several relief against both defendants and the defendant "joinder provision of Rule 52.05(a) authorizes joinder of claims arising from separate accidents where there is a common issue of fact or law." *Id*. at 619. Again, as with the multiple, unrelated defendants in *Jinkerson* and *Turnbough*, the joinder provision at issue in this case – i.e., the ***first*** sentence of Rule 52.05(a) – was not at issue.

More importantly, the principal opinion loses the thread running through these cases. *Nixon* notes *Turnbough*, *Jinkerson*, and *Sperry* imposed limitations on the application of the second sentence of Rule 52.05(a) to prevent it from being used to join unrelated claims against unrelated defendants in an action in which venue for each claim and each defendant could not be established independently. *Nixon*, 248 S.W.3d at 619 n.6. But the reference to *Sperry* should have deterred the principal opinion from relying on *Nixon*, *Turnbough*, and *Jinkerson* because – as noted above – *Sperry* (and, therefore, *Turnbough*, on which *Sperry* exclusively relies) was overruled by *State ex rel. Bitting v. Adolf*, 704 S.W.2d 671, 673 (Mo. banc 1986), precisely because the convenience, efficiencies and reduced expenses resulting from proper joinder precludes the idea that venue must always be established separately for every claim and every defendant. Judge

10

Blackmar, who authored the principal opinion in *Bitting* and the dissenting opinion in

*Sperry*, justified overruling *Sperry* this way:

> Our holding is consistent with the general line of cases which treat of the interrelation of the venue statutes and the rules governing joinder of claims. (Rule 52.05(a), based on § 507.040, RSMo 1978). *State ex rel. Farmers Insurance Co., Inc. v. Murphy,* 518 S.W.2d 655 (Mo. banc 1975), gave general sanction to venue in the county of residence of any properly joined defendant. *State ex rel. Garrison Wagner Co. v. Schaaf,* 528 S.W.2d 438 (Mo. banc 1975), held that a third-party claim could be maintained in a lawsuit without regard to the residence of the third-party defendant. There, as here, the element of convenience was strong. If the claims now before us had been separately filed, the case might indeed be converted into a lawsuit indistinguishable from this one by means of third-party proceedings. Our conclusion accords with prior cases and with the letter and spirit of the governing statutes and rules.

*Bitting*, 704 S.W.2d at 673 (footnote omitted). Judge Blackmar in *Bitting* cites to his

dissent in *Sperry*, where he explained specifically that the "authority for joinder, then,

comes directly from the legislature [in section 507.040.1] and has not been enlarged by

court rule." *Sperry*, 657 S.W.2d at 623 (Blackmar, J., dissenting) (emphasis added).

By reviving *Turnbough*, despite it having been burned root and branch in *Bitting*,

the principal opinion does unnecessary violence to the policies the venue statutes, the

original joinder statutes, and, most recently, Rule 52.05(a) were meant to promote.

"[V]enue is not determined by constitutional principles but by the applicable rule or

statute that determines, among many courts with jurisdiction, the appropriate forum for

the trial." *State ex rel. Heartland Title Servs. v. Harrell*, 500 S.W.3d 239, 241 (Mo. banc

2016) (quotation marks omitted). "The primary purpose of Missouri's venue statutes is

to provide a convenient, logical, and orderly forum for the resolution of disputes." *State*

*ex rel. Elson v. Koehr*, 856 S.W.2d 57, 59 (Mo. banc 1993). By the same token, "the

11

philosophy of permissive joinder … is to promote judicial economy, expedite final disposition of litigation and prevent inconsistent results due to multiple separate lawsuits." *State ex rel. Farmers Ins. Co. Inc. v. Murphy*, 518 S.W.2d 655, 662 (Mo. banc 1975); *see also M.K. v. Tenet*, 216 F.R.D. 133, 137 (D.D.C. 2002) (The purpose of the joinder rule "is to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss of time to the court as well as the litigants appearing before it.").[4] Indeed, under modern joinder rules, and given "the impulse … toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Here, assuming both Relators are subject to personal jurisdiction in Missouri for injuries suffered by Missouri residents, it makes perfect sense for – and Rule 52.05(a) expressly allows – those plaintiffs to join their claims in a single action. Under the plain language of section 508.010.4, that action can be brought in the county where any one of the plaintiffs in any of the tort counts in the action was first injured, including St. Louis City.[5] The savings in time, money, and judicial resources that section 508.010.4 and

---

[4] Missouri's Rule 52.05(a) is substantially the same as Federal Rule 20(a), and, when "the Missouri and federal rules are essentially the same, federal precedents constitute persuasive, although not binding, authority." *Hemme v. Bharti*, 183 S.W.3d 593, 597 (Mo. banc 2006).

[5] Cases in which venue is proper in two different places are – or, at least, previously were – not uncommon. *See, e.g., State ex rel. Kan. City S. Ry. Co. v. Nixon*, 282 S.W.3d 363, 367 (Mo. banc 2009) ("There are two correct venues in this case …."); *State ex rel. Selimanovic v. Dierker*, 246 S.W.3d 931, 933 (Mo. banc 2008) ("That judgment could have been rendered in either the circuit court of the City of St. Louis or in the circuit court of St. Louis County.").

12

Rule 52.05(a) were meant to produce will now be lost under the holding in the principal opinion.

But what then of the supposed unfairness of which the Relators complain? The answer should be found in a motion to sever, if and when the circuit court decides to try the individual plaintiffs' claims separately. That was the scene – and should have been the ground of decision – in *Barron v. Abbott Laboratories, Inc.,* 529 S.W.3d 795, and that is precisely the question to which Relators devote the overwhelming majority of their efforts in the current proceeding. Here, Relators avoided the mistake made in *Barron,* where defendants failed to identify that they were appealing the denial of the renewed motion to sever made after the circuit court began setting individual plaintiff's claims for trial. *Id.* at 803-04 (Wilson, J., concurring). Instead, Relators argue the circuit court abused its discretion in failing to sever Plaintiff Blaes's claims after his claims were set for separate trial and, once severed, failing to reevaluate venue for Plaintiff Blaes's action under section 508.012 and transferring his action to St. Louis County. I would quash the preliminary writs in these cases because I do not believe this Court should review inherently discretionary rulings (such as a ruling on a motion to sever) in the context of a petition for extraordinary writ.[6] However, I am persuaded that the trial court erred in not

---

[6] *See State ex rel. K-Mart Corp. v. Holliger*, 986 S.W.2d 165, 169 (Mo. banc 1999) ("The general rule is that, if a court is entitled to exercise discretion in the matter before it, a writ of prohibition cannot prevent or control the manner of its exercise, so long as the exercise is within the jurisdiction of the court."), *abrogated on other grounds by State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41 (Mo. banc 2017); *State ex rel. Norfolk & W. Ry. Co. v. Dowd*, 448 S.W.2d 1, 3-4 (Mo. banc 1969) (concluding "it has been established over and over that prohibition will not lie to control discretionary judicial action by a lower court"); *State ex rel. Sommer v. Calcaterra*, 247 S.W.2d 728, 730 (Mo. banc 1952) ("It is a well-settled rule that prohibition will not lie to control … discretionary actions ….").

granting Relators' motion and would grant relief were that claim presented here on appeal. *See id*. at 803 (Wilson, J., concurring) (because section 508.012 requires venue be reevaluated after severance and mandates transfer if venue is no longer proper, an erroneous denial of a motion to sever is "patently prejudicial").

Rather than conduct the analysis here that might have been conducted in *Barron* – i.e., deciding whether the circuit court erred in denying the motion to sever the case – and either make the writ permanent because the circuit court abused its discretion in denying Relators' motion to sever and transfer or quash the preliminary writ on the basis of the cases cited in footnote 6 above, the principal opinion unexpectedly[7] veers off course to upend settled law surrounding joinder. Ignoring the plain language of section 508.010.4, the principal opinion reads into that section an "every count – every plaintiff" requirement that the legislature did not write and finds in Rule 51.01 a prohibition against the interplay of venue and joinder that has been expressly sanctioned by the legislature since 1943. For these reasons, I respectfully dissent.

_____
Paul C. Wilson, Judge

---

[7]  It reasonably may be wondered why this Court in *Barron* did not follow the path the principal opinion now claims it is powerless to avoid. When Abbott sought a writ in this Court prior to its doomed appeal (where, ironically, it was told that disputes over venue were better reviewed by petition for extraordinary writ), it specifically argued Rule 51.01 prohibited a plaintiff from using "permissive joinder under Rule 52.05 to piggyback on the venue of another plaintiff with whom she is joined." This argument was reasserted in its appeal. Neither time was it deemed to be grounds for relief. And, lest Abbott conclude incorrectly that this whipsaw is reserved solely for it, this Court declined to grant relief based on the interplay of Rules 51.01 and 52.05(a) in *State ex rel. GlaxoSmithKline, LLC, v. Neill*, SC91374, and *State ex rel. Monsanto v. Hettenbach*, SC92438, both of which were writ petitions filed by a defendant claiming venue was improper because each plaintiff in a multi-plaintiff lawsuit was unable to independently file suit in the chosen venue.

14