Miasia BARRON, et al., Plaintiffs,

and

Maddison Schmidt, by next friends, Garry Schmidt and Tammy Schmidt, Respondents,

v.

ABBOTT LABORATORIES, INC., Appellant.

No. SC 96151

Supreme Court of Missouri, en banc.

Opinion issued September 12, 2017

Rehearing Denied October 31, 2017

Abbott was represented by William Ray Price Jr. of Armstrong Teasdale LLP in St. Louis, (314) 621-5070; Paul F. Strain and Stephen E. Marshall of Venable LLP in Baltimore, Maryland, (410) 244-7400; and Dan H. Ball, K. Lee Marshall, Stefan A. Mallen and Stefanie Rothermel of Bryan Cave in St. Louis, (314) 259-2000.

Schmidt was represented by Edward D. Robertson Jr., Anthony L. DeWitt and Mary D. Winter of Bartimus, Frickleton and Robertson PC in Jefferson City, (573) 659-4454; John T. Boudas, Sejal Brahmbhatt and Margot G. Trevino of Williams Kherkher Hart Boundas LLP in Houston, Texas, (713) 230-2200; Douglas Dowd and William T. Dowd of Dowd & Dowd PC in St. Louis, (314) 621-2500; and John Driscoll and Christopher J. Quinn of The Driscoll Firm PC in St. Louis, (314) 932-3232.

Several organizations filed briefs as friends of the Court. The Pharmaceutical Research and Manufacturers of America was represented by Michael X. Imbroscio and Paul W. Schmidt of Covington & Burling LLP in Washington, D.C., (202) 662-6000; and Bart C. Sullivan of Fox Galvin LLC in St. Louis, (314) 588-7000. The St. Louis Regional Chamber, The Chamber of

Commerce of the United States of America and the National Association of Manufacturers were represented by Robert J. Wagner of Thompson Coburn LLP in St. Louis, (314) 552-6000.

W. Brent Powell, Judge

Abbott Laboratories, Inc., appeals the circuit court's judgment awarding Maddison Schmidt $15 million in compensatory damages and $23 million in punitive damages for her personal injury claim. Abbott argues the circuit court erred in overruling: (1) its pretrial motion to transfer venue; (2) its pretrial motion to sever Schmidt's claim from other plaintiffs' claims; (3) its motions for directed verdict and judgment notwithstanding the verdict on Schmidt's failure-to-warn claim; and (4) its motions for directed verdict and judgment notwithstanding the verdict on Schmidt's demand for punitive damages. Because Abbott received a fair trial, the circuit court's judgment is affirmed.

## I. Factual and Procedural History

Schmidt was born with spina bifida and other birth defects. She was born and resides in Minnesota. Her mother ingested Depakote, an antiepileptic drug manufactured and marketed by Abbott, while Schmidt was in utero. Her mother ingested the Depakote in Minnesota. Abbott's company headquarters are in Illinois. Despite this lack of connection to Missouri, Schmidt joined with four Missouri plaintiffs and 19 other non-Missouri plaintiffs to file a single action against Abbott in the circuit court of the city of St. Louis. Each plaintiff alleged birth defects from in utero exposure to Depakote and sought both compensatory and punitive damages.[1] Abbott moved to sever the plaintiffs' individual claims, arguing they should not have been joined together in a single action. Abbott also moved to transfer the non-Missouri plaintiffs' claims to the circuit court of St. Louis County, which Abbott argued was the proper venue for these plaintiffs.[2] After the circuit court overruled Abbott's motions, Abbott raised its venue and joinder arguments in a petition for a writ of mandamus or, alternatively, a writ of prohibition. Both the court of appeals and this Court denied Abbott's writ petition without opinion.

The circuit court then ordered each side to nominate plaintiffs for separate, individual trials, though all the plaintiffs' claims remained joined in one action. Schmidt was nominated by the plaintiffs' counsel, and a jury trial was held solely on Schmidt's claims without severing the other plaintiffs' claim. Schmidt advanced a failure-to-warn theory contending Depakote's label did not adequately warn of the risk of birth defects posed by the drug. At the close of Schmidt's evidence and at the close of all evidence, Abbott moved for a directed verdict on both Schmidt's failure-to-warn claim and her demand for punitive damages. The circuit court overruled Abbott's motions. The jury found in Schmidt's favor and awarded her $15 million in compensatory damages and $23 million in punitive damages. Abbott then moved for judgment notwithstanding the verdict or, alternatively, a new trial, and renewed the arguments it made for a directed verdict, as well as its venue and joinder arguments. The circuit court overruled Abbott's mo-

1. Two of the Missouri plaintiffs alleged they were born with birth defects in the city of St. Louis.

2. Abbott waived personal jurisdiction. *See* Rule 55.27(g). The United States Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.,* — U.S. ——, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017), therefore, has no application to this appeal.

tion and entered judgment in accordance with the jury's verdict.[3] Abbott appealed and, after opinion, the court of appeals transferred the case to this Court pursuant to article V, § 10 of the Missouri Constitution.

## II. Venue and Joinder

■ In Point I, Abbott argues the circuit court erred in overruling its pretrial motion to transfer venue of the non-Missouri plaintiffs' claims, which included Schmidt's claim. Abbott argues, pursuant to § 508.010.5, RSMo Supp. 2013, the proper venue for Schmidt's claim is St. Louis County and the joinder of Missouri plaintiffs with Schmidt's claim could not be used to make venue proper in the city of St. Louis. In Point II, Abbott argues the circuit court erred in overruling its pretrial motion to sever all individual plaintiffs' claims because joinder of the claims was improper pursuant to Rule 52.05. Abbott claims this errant ruling resulted in improper venue in the city of St. Louis. Abbott's first two points on appeal, therefore, contend the circuit court's errors resulted in Schmidt's claim being tried in the city of St. Louis, rather than St. Louis County.

■ Even assuming the circuit court erred by either failing to transfer venue or failing to sever the claims, an error does not warrant reversal on appeal unless the error results in prejudice. *Dieser v. St. Anthony's Med. Ctr.*, 498 S.W.3d 419, 435-36 (Mo. banc 2016); *Lewis v. Wahl*, 842 S.W.2d 82, 84-85 (Mo. banc 1992). Rule 84.13(b) provides: "No appellate court shall reverse any judgment unless it finds that error was committed by the trial court against the appellant materially affecting the merits of the action." Despite this clear mandate of Rule 84.13(b), Abbott insists it is not required to show prejudice, relying on this Court's decision in *Igoe v. Department of Labor and Industrial Relations*, 152 S.W.3d 284 (Mo. banc 2005).

In *Igoe*, this Court reversed a judgment based on the circuit court's error in failing to transfer venue, but it did not discuss whether the error resulted in prejudice. *See id.* at 288-89. This silence should not be inferred as an implicit holding that no prejudice is required when error results in improper venue. Such a holding would be contrary to Rule 84.13(b), and would be akin to treating improper venue as a jurisdictional defect—which it certainly is not.[4] *See State ex rel. DePaul Health Ctr. v. Mummert*, 870 S.W.2d 820, 822 (Mo. banc 1994) (differentiating between venue and personal jurisdiction); *see also J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253-54 (Mo. banc 2009) (explaining that errors in complying with a statute are not jurisdictional in nature). The circuit court of the city of St. Louis—even if it were the improper venue—had jurisdiction to enter a judgment against Abbott, and its failure to transfer venue or sever the claims is like any other alleged non-jurisdictional error and is subject to Rule 84.13(b). *See In re Marriage of Hendrix*, 183 S.W.3d 582, 590 (Mo. banc 2006).

While maintaining its position that prejudice is not required, Abbott also argues it was prejudiced by the circuit court's failure to transfer venue or sever the claims because the city of St. Louis is a more favorable venue to plaintiffs than St. Louis County. Essentially, Abbott argues the

---

**3.** Although other plaintiffs' claims remained pending in the action, the circuit court entered a separate judgment on Schmidt's claim pursuant to Rule 74.01(b).

**4.** A showing of prejudice is not required for a jurisdictional defect because such a defect renders a judgment void. *See Blanchette v. Blanchette*, 476 S.W.3d 273, 278 (Mo. banc 2015).

city of St. Louis is biased in general but fails to point to any specific event or action in the case or trial to support this generality. Abbott fails to identify any particular ruling by the circuit court suggesting bias or any particular juror who should have been disqualified for bias. This claim of prejudice will not suffice.

While Abbott may have preferred a trial in St. Louis County, it cannot establish the trial in the city of St. Louis was unfair. This Court declines to hold Abbott was prejudiced simply because a fair judge and jury in the city of St. Louis rendered the judgment and verdict rather than a fair judge and jury in St. Louis County.[5] Because Abbott fails to satisfy the prejudice requirement, this Court need not decide whether the circuit court erred in either failing to transfer venue or failing to sever the claims. Points I and II are denied.[6]

### III. Failure to Warn

■ In Point III, Abbott argues the circuit court erred in overruling its motions for directed verdict and judgment notwithstanding the verdict on Schmidt's failure-to-warn claim because the Depakote label provided adequate warning as a matter of Minnesota law.[7] "The standard

of review for failures to sustain motions for directed verdict and for JNOV is essentially the same." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010). "This Court must determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Id.* "Evidence is viewed in the light most favorable to the jury's verdict, giving the plaintiff all reasonable inferences and disregarding all conflicting evidence and inferences." *Id.*

■ "In general, a supplier has a duty to warn end users of a dangerous product if it is reasonably foreseeable that an injury could occur in its use." *Gray v. Badger Mining Corp.*, 676 N.W.2d 268, 274 (Minn. 2004). "The duty to warn includes the duty to give adequate instructions for the safe use of the product." *Id.* "To be legally adequate, the warning should (1) attract the attention of those that the product could harm; (2) explain the mechanism and mode of injury; and (3) provide instructions on ways to safely use the product to avoid injury." *Id.* "Generally, the adequacy of a warning is a fact question for the jury." *Id.* at 279. Abbott argues Depakote's label satisfied the three

---

**5.** Abbott also suggests the city of St. Louis and the circuit court of the city of St. Louis have suffered prejudice by being burdened with tort claims filed by out-of-state plaintiffs. Any burden on the city of St. Louis or the circuit court is not relevant to the prejudice contemplated by Rule 84.13(b).

**6.** The concurring opinion suggests this opinion "demands" a showing of prejudice as though such a requirement were arbitrarily created by this opinion. But it is this Court's Rule 84.13(b) that governs and requires the showing of prejudice on appeal in this case. While the concurring opinion is troubled by the difficulty in showing prejudice on appeal for these types of claims, Rule 84.13(b) contains no exceptions for improper venue claims. Perhaps the difficulty in showing prej-

udice on appeal is why these types of claims are better raised in the pretrial writ context, which requires no showing of prejudice. *See State ex rel. Jakobe v. Billings*, 421 S.W.2d 16, 18 (Mo. banc 1967); *see also State ex rel. Kansas City S. Ry. Co. v. Nixon*, 282 S.W.3d 363, 367 n.1 (Mo. banc 2009) (Fischer, J., dissenting) ("Direct appeal after completion of a jury trial historically has not been considered an adequate remedy to address improper venue."). Furthermore, if the General Assembly deems it wise to create an exception to the showing of prejudice requirement found in Rule 84.13(b), it is free to do so. *See* Mo. Const. Art. V, § 5.

**7.** The parties agree Minnesota substantive law applies.

requirements needed to make its warning adequate for purposes of Minnesota law.

Even assuming these three requirements were facially satisfied, the contents of a warning also have to be complete and accurate, so as to not mislead. *See Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 582 (Minn. 2012). Depakote's label stated: there was clinical literature indicating "the use of antiepileptic drugs during pregnancy results in an increased incidence of birth defects;" Depakote had "a possible similar association" as other antiepileptic drugs to birth defects; and the Centers for Disease Control estimated the risk of pregnant women exposed to Depakote having children with spina bifida was 1 or 2 percent. Schmidt, however, presented evidence Abbott was aware of multiple studies concluding: (1) Depakote posed a considerably higher risk of overall birth defects than other antiepileptic drugs, and should be avoided by women of childbearing potential unless all other alternatives had been tried and failed; (2) the overall risk of birth defects was 10 percent or even greater; (3) the risk of spina bifida was significantly higher than 1 or 2 percent; and (4) the risk of spina bifida amounted to a twentyfold increased risk compared with the background rate in the general population. As Depakote's label did not reflect this relevant information, a reasonable inference could be drawn from this evidence that Abbott's warning was not complete and accurate and, therefore, did not adequately warn. Point III is denied.

## IV. Punitive Damages

In Point IV, Abbott argues the circuit court erred in overruling its motions for directed verdict and judgment notwithstanding the verdict on Schmidt's demand for punitive damages.[8] Minnesota law provides:

   (a) Punitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others.

   (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregards facts that create a high probability of injury to the rights or safety of others and:

     (1) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injury to the rights or safety of others; or

     (2) deliberately proceeds to act with indifference to the high probability of injury to the rights or safety of others.

Minn. Stat. § 549.20.1 (2012). Abbott argues there was not clear and convincing evidence it acted with deliberate disregard for the rights or safety of others because Depakote's label contained a "black box" warning, "the most serious type of warning mandated by the U.S. Food and Drug Administration."

The black box warning is not relevant for purposes of this Court's standard of review. In reviewing a circuit court's overruling of a motion for directed verdict or judgment notwithstanding the verdict, this Court views the evidence in the light most favorable to the verdict, gives the plaintiff all reasonable inferences, and disregards all contrary evidence and inferences. *Fleshner*, 304 S.W.3d at 95. As discussed above, there was evidence Abbott was aware there were studies indicating Depakote was much more dangerous in terms of

---

**8.** On appeal, Abbott challenges only the *award* of punitive damages, not the amount.

birth defects than its label suggested. In addition, there was evidence presented that, despite this knowledge, Abbott conducted no independent research or studies of its own to evaluate Depakote's risks for birth defects. There was evidence showing Abbott instead spent $50 million to $100 million per year marketing Depakote, sought to "squeeze every dollar and every [prescription for Depakote] out of the market," and intended to make Depakote the first choice antiepileptic drug for women, despite internally referring to it as a "dirty drug." A reasonable inference from this evidence is that, motivated by profits, Abbott deliberately disregarded the safety of Depakote users. Point IV is denied.[9]

## V. Conclusion

The circuit court's judgment is affirmed.

Draper, Russell and Breckenridge, JJ., concur;

Wilson, J., concurs in separate opinion filed;

Fischer, C.J., and Stith, J., concur in opinion of Wilson, J.

Paul C. Wilson, Judge, concurring.

The principal opinion affirms the judgment below on the ground that, even assuming the trial court erred in failing to grant the motions to transfer and to sever by Abbott Laboratories, Inc. ("Abbott"), reversal is not required because Abbott failed to show prejudice. Respectfully, though I agree the judgment should be affirmed, I disagree with the analysis used to reach that result.

Even though the use of a Rule 52.05(a) joinder to combine multiple in-state and out-of-state plaintiffs in a single action largely will be prevented in the future by *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, —— U.S. ——, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017), I am compelled to write separately because—in cases like the present one—the use of Rule 52.05(a) to join the claims of multiple Missouri plaintiffs in a single petition will (and should) still occur. In my view, the analysis in the principal opinion falls short because it fails to highlight critical distinctions between non-discretionary rulings on motions to transfer and discretionary rulings on motions to sever and, more importantly, between a motion to sever made at the outset of an action and one made after pretrial proceedings are complete and the trial court has determined to try each plaintiff's claims separately.

Under the analysis in the principal opinion, when a defendant's initial efforts to sever each plaintiff's claims and transfer the resulting separate actions to proper venues fail (both in the trial court and, by way of petitions for extraordinary writs, in the appellate courts), the defendant is left without a remedy unless it can scale the nearly insurmountable hurdle of proving prejudice on appeal. The analysis set forth below, on the other hand, focuses on the fact that (unlike a motion to transfer) the trial court has discretion in ruling on motions to sever and the fact that this discretion will vary depending upon the circumstances of the litigation at the time the motion to sever is made. This analysis protects the rights of all parties, furthers the policies of efficiency and expeditiousness that animate Rule 52.05(a), and avoids creating the analytical dead-end of a preju-

---

**9.** In addition, Abbott argues the award of punitive damages violates due process. This constitutional claim was not properly raised before the circuit court and, therefore, has not been preserved for review. *See Mayes v. Saint Luke's Hosp. of Kansas City*, 430 S.W.3d 260, 266 (Mo. banc 2014).

dice requirement that seldom (if ever) can be met.

First, it bears emphasizing that Rule 52.05(a) expressly permits multiple plaintiffs to join their claims in a single petition "if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence or series of transactions or occurrences *and* if any question of law or fact common to all of them will arise in the action." [Emphasis added.] Though there are obvious differences among Plaintiffs' claims in this case, it is clear those claims arose out of a series of occurrences (i.e., the taking of Depakote) and at least one common question of law or fact will arise in resolving those claims (e.g., whether Abbott's design was defective, whether its testing was deficient, or whether its warnings were inadequate). As a result, joinder of Plaintiffs' claims in a single petition was proper in this case and the trial court's decision not to grant Abbott's original motion to sever—made at the outset of this case—was not an abuse of discretion.

Second, because joinder of Plaintiffs' claims in a single petition was proper under Rule 52.05(a), venue for this action in St. Louis City also was proper. Section 508.010, RSMo 2005, in relevant part, provides:

> 4. Notwithstanding any other provision of law, in all actions in which there is *any count* alleging a tort and in which *the plaintiff* was first injured in the state of Missouri, venue shall be in the county where the plaintiff was first injured by the wrongful acts or negligent conduct alleged in the action.

§ 508.010.4 (emphasis added). The first requirement in this subsection is that the petition must contain at least one count alleging a tort. Plainly, that requirement is met in this case because the petition contained numerous tort counts. The second requirement in this section is that "the plaintiff" in one of these tort counts must allege they were first injured in this state. Here, four Plaintiffs alleged in their separate tort counts that they were first injured in the City of St. Louis, Missouri. As a result, both of the requirements of section 508.010.4 were met in this case and venue for the entire "action" (and not merely for the qualifying tort counts) was proper in St. Louis City.[1]

At this point, the analysis is clear that the question of venue in a multi-plaintiff, single-defendant case such as the present one is determined by section 508.010.4 and, therefore, venue is proper in any Missouri county in which any one of the plaintiffs in the many tort counts alleges he or she was first injured. The application of section 508.010.4, in turn, requires a determination

---

1. Arguably, section 508.010.5 compels a different result because there is at least one count in Plaintiffs' petition that both alleges a tort and alleges the plaintiff for that count was first injured outside the state. If so, subsections 4 and 5 would compel contrary and conflicting results—in cases such as the present one—where there are multiple plaintiffs seeking relief against a single, common defendant and where some of the plaintiffs were first injured in-state while other plaintiffs were first injured out of state. This quandary is enhanced by the fact that the introductory phrase in each subsection instructs this Court to ignore the other subsection. Perhaps this conflict suggests that, read as whole, section 508.010 simply does not define a proper venue for this action and, therefore, venue was proper in any county. *See State ex rel. Heartland Title Servs., Inc. v. Harrell*, 500 S.W.3d 239, 243 (Mo. banc 2016) (where section 508.010 fails to identify proper venue in a given case, venue is proper in any county). In my view, however, that approach is unnecessary. Here, Plaintiffs contend that, as filed, venue in this action was controlled by section 508.010.4, and the plain wording of that provision instructs this Court to ignore all contrary provisions of law, including section 508.010.5.

as to whether the various counts of the various plaintiffs were properly joined in a single petition under Rule 52.05(a), which requires the trial court to determine whether the plaintiffs' claims arose out of the same transaction or occurrence, or series of transactions or occurrences, and whether common questions of law or fact will arise during the resolution of those claims. If so, joinder is proper under Rule 52.05(a) and any one of the joined counts may create venue for the entire action under section 508.010.4. Finally, if joinder is proper under Rule 52.05(a), a trial court's decision to overrule a motion to sever the properly joined counts at the outset of the litigation—by operation of Rule 52.05(a) alone—cannot be an abuse of discretion.

But to say a trial court does not abuse its discretion by refusing to sever properly joined claims at the *outset* of an action, however, does not mean there will not come a time in the course of the litigation when severance is required. The efficient resolution of claims with common questions of law and fact is the driving force behind permissive joinder under Rule 52.05(a), and the trial court's discretion to pursue that end is bounded only by its ingenuity and the circumstances of the action. *See, e.g.,* Rule 66.02 (when "conducive to expedition and economy," the trial court may order a separate trial of any claims or issues). Resolution of early dispositive motions, coordinated discovery, adjudication of motions for full or partial summary judgment, and joint trials of common questions under Rule 66.02 are just a few of the tools trial courts have to manage multi-party civil litigation in pursuit of the just, speedy and inexpensive resolution of claims that Rule 41.03 requires. Accordingly, the trial court has broad discretion in deciding whether and when to sever properly joined claims, and its decisions in that regard should be affirmed as long as they are rationally related to the goals of efficiency and expeditiousness underlying Rule 52.05(a).

Once the trial court has determined that each plaintiff's claims are to be tried separately, however, the trial court necessarily has decided there are no further gains in efficiency or expeditiousness to be had from the joinder authorized by Rule 52.05(a). Once that decision has been made, therefore, the trial court has discretion to deny a subsequent or renewed motion to sever only in the rarest of circumstances. Moreover, an abuse of discretion in denying such a motion will be patently prejudicial under section 508.012, RSMo 2005, which provides:

> At any time prior to the commencement of a trial, *if a plaintiff* or defendant, including a third-party plaintiff or defendant, *is either added or removed* from a petition filed in any court in the state of Missouri which would have, if originally added or removed to the initial petition, altered the determination of venue under section 508.010, then the judge shall upon application of any party transfer the case to a proper forum under section 476.410.

§ 508.012 (emphasis added).

A decision to sever each plaintiff's claims in a multi-plaintiff case "removes" a plaintiff for purposes of section 508.012 and, therefore, doing so will require the trial court (on application of a party) to determine the proper venue for the various actions resulting from that severance. Where those venues are different from the original venue, section 508.012 requires the trial court to transfer those actions to their proper venues for trial.

In the present case, if Abbott had renewed its motion to sever after the trial court announced its intention to try each Plaintiff's claims separately—and if Abbott

had challenged that failure in this appeal—the proper result would be to vacate the judgment entered below and remand with instructions for the trial court: (1) to sever each Plaintiff's claims into separate actions; (2) to reassess venue for each of the newly severed actions under section 508.012; and (3) to transfer those actions for which venue in St. Louis City is not proper under section 508.010 to their proper venue. That said, I am not convinced this is the proper result.

Even assuming Abbott renewed its motion to sever after pretrial proceedings were complete and the trial court had announced its intention to try each Plaintiff's claims separately, Abbott failed to identify clearly the trial court's denial of that *renewed* motion to sever—rather than the denial of Abbott's original motion—as the action being challenged in its point relied on. *See* Rule 84.04(d)(1) (each point relied on "shall ... [i]dentify the trial court ruling or action that the appellant challenges"). Instead, Abbott's point relied on regarding severance is ambiguous as to whether it is the denial of Abbott's original or renewed motion to sever that is being challenged, while Abbott's appendix and the other sections in its brief refer only to the trial court's denial of Abbott's original motion. Because the trial court did not abuse its discretion in denying Abbott's original motion, I agree with the principal opinion that the proper result of this appeal is to affirm the judgment of the trial court.

Though I agree with the result in the principal opinion, my disagreement with the analysis in that opinion is not an academic one, and the effects of the path chosen by the Court in this case will be immediate and significant. As explained above, once the trial court determined that each Plaintiff's claims should be tried separately in this case, I believe it was error not to sever them and transfer those for which venue was no longer proper under sections 508.012 and 508.010. The principal opinion is at least willing to assume this is true. Nevertheless, under the principal opinion, the trial court may continue to try each of the remaining 23 Plaintiff's claims separately in the City of St. Louis even though venue would not be proper for 19 of those Plaintiffs' claims under section 508.012 if severance had occurred. Abbott may claim this is error, but it will never obtain relief without showing the elusive, undefined, and likely unprovable prejudice that the principal opinion demands. I am unwilling to countenance such an immediate, improper, and easily avoidable outcome.