

# In the
# Missouri Court of Appeals
# Western District

CYGNUS SBL LOANS, LLC.,

        **Respondent,**

v.

MICHAEL J. HEJNA, ET AL.,

        **Appellants.**

**WD81675 (CONSOLIDATED WITH WD81676)**

**OPINION FILED: MARCH 5, 2019**

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable S. Margene Burnett, Judge**

**Before Division Three: Mark D. Pfeiffer, Presiding Judge, Lisa White Hardwick, Judge,**
**Anthony Rex Gabbert, Judge**

Michael J. Hejna and Monique C. Hejna ("Hejna" collectively), Gordon A. Gundaker, Jr.,

and Gordon A. Gundaker, Jr. as trustee of the Gordan A. Gundaker, Jr. Revocable Trust dated

January 6, 1997 ("Gundaker" collectively),[1] appeal the circuit court's grant of partial summary

judgment to Cygnus SBL Loans, LLC.[2]  Appellants contend the circuit court erred, 1) in denying

---

[1] Hejna and Gundaker will be referenced as "Appellants" collectively.  Hejna and Gundaker separately appealed the court's judgment.  Those appeals have been consolidated.  Various points on appeal in the Hejna and Gundaker briefs overlap.  Where possible, overlapping points will be addressed together.

[2] Cygnus received the original loan promissory note during the pendency of the underlying litigation from CADC /RADC VENTURE 2011-1, LLC.  On September 14, 2017, Cygnus filed a Motion to Substitute upon Transfer of Interest.  The motion was granted.  As both CADC and Cygnus were Respondents at various points in the litigation, they may both be referenced as "Respondent" herein.

Appellants' motions to transfer venue, 2) in denying Appellants' motions to strike the affidavit of Mante Dzakuma, 3) in finding Respondent had standing to sue, 4) in entering summary judgment on Count VI of Respondent's petition without determining the Deed in Lieu Agreement invalid, 5) in entering summary judgment on Count VI after accepting additional materials raising new facts and evidence, and 6) in entering summary judgment on Count VI against Gundaker without Respondent showing Gundaker executed and delivered a guaranty, that credit was extended in reliance upon a guaranty, or that amounts remained due under an enforceable obligation. We affirm.

## Background and Procedural Information

Gunnett, LLC ("Gunnett") is a Missouri limited liability company. Its members are Gordan Gundaker, Michael Hejna, and Steve Stinnett. Gunnett entered into a loan with Premier Bank in 2006, borrowing approximately $8.3 million. The loan was secured by real property ("Property") located in Christian County, Missouri. Members of Gunnett, along with Monique C. Hejna, Deborah Stinnett, and Gordon A. Gundaker in his capacity as trustee of the Gordon A. Gundaker, Jr. Revocable Trust dated January 6, 1997 (collectively "Guarantors"), each executed and delivered guaranties in 2006 promising repayment of the loan. From 2006 to 2010, Gunnett renewed the note six times. The last note renewal was on January 15, 2010, in the principal amount of $8,160,175, with a maturity date of January 15, 2011. Guarantors amended and restated their guaranties on January 15, 2010.

Premier Bank was closed in 2010 by the Missouri Division of Finance, which appointed the Federal Deposit Insurance Corporation (FDIC) as receiver with authority to handle and dispose of Premier Bank's assets, liabilities, and operations. The note matured on January 15, 2011, and was unpaid. As part of the FDIC's liquidation of Premier Bank, CADC/RADC VENTURE 2011-

2

1, LLC (CADC), a Delaware limited liability company, received the original loan promissory note from Gunnett, endorsed in blank, together with all related loan documents.[3] Sabal Financial Group, L.P. ("Sabal") was a disclosed agent for CADC. Mante Dzakuma was an asset manager for Sabal and a disclosed agent for CADC. Karick M. Brown was a portfolio manager with Sabal and a disclosed agent for CADC.[4]

In 2012, CADC, acting through Sabal, contacted Gunnett and Guarantors about repaying the indebtedness. On or about July 6, 2012, Gunnett, Guarantors, and CADC executed a Deed-in-Lieu Agreement (the "DIL") related to the loan. Therein Guarantors agreed to each "execute and deliver to Lender" promissory notes for specified amounts, referenced in the DIL as "Deficiency Notes;" these notes were collectively equal to the overall deficiency amount in proportion to each Guarantor's liability under the guaranty. A developer agreement, lease agreement, and agreements to convey certain documents were also included in the DIL. The Deficiency Notes stated they were to replace the original guaranties. The DIL provided for the revival of Guarantors' liability under the loan and guaranties if the DIL or any related payments failed. The DIL and the maturity dates of the Deficiency Notes provided Guarantors three years, to July 6, 2015, to sell the Property in order to reduce or extinguish the deficiency amount. On July 6, 2015, the deficiency remained unpaid.

On October 28, 2015, Respondent filed a Petition against Guarantors to collect the deficiency. Count I through Count III of the Petition alleged breach of each Deficiency Note as a

---

[3] The FDIC delivered the original note, endorsed in blank, together with all related loan documents to CADC on August 24, 2011.

[4] Cygnus is a Georgia limited liability company that, during the underlying litigation, received the original loan promissory note, endorsed in blank, together with all related loan documents from CADC. Andrew Cummings is a manager of Cygnus.

3

written contract for repayment of a debt. Guarantors defended the suit by alleging the Deficiency Notes were unenforceable because Guarantors had never delivered the notes as required under the DIL. (Copies of signed Deficiency Notes were delivered to Respondent, but not the original Deficiency Notes.) Respondent then amended its petition and added an alternative count (Count VI) alleging breach of the original guaranties.

After service of both the initial petition and First Amended Petition, Appellants filed motions to transfer venue, arguing the DIL's forum selection clause was unenforceable because the original Deficiency Notes were not delivered. The motions were denied.

Respondent filed a motion for partial summary judgment on September 9, 2016. For Count VI, Respondent requested a determination of Appellants' liability only on the breach of guaranties claim. The guaranties provided for an interest component that continued to accrue. Respondent requested that determination as to damages be made separately from underlying liability. Appellants opposed summary judgment and filed separate motions to strike the affidavit of Mante Dzakuma, which had been included with Respondent's summary judgment motion.

On January 12, 2017, the court denied the Motion to Strike, and on January 17, 2017, entered an order partially granting and partially denying summary judgment. Partial summary judgment was granted on Guarantors' liability under their original guaranties. Summary judgment was denied on the remaining counts.

On January 20 and 23, 2017, Appellants filed motions to disqualify the judge arguing that Respondent's counsel's wife's father was first cousin to the judge's law clerk's grandfather. The court informed the parties that the relationship had no connection and did not affect the court's ability to preside over the case, but the judge, nevertheless, recused himself on January 25, 2017.

4

Before ordering the case transferred for reassignment, the judge vacated the partial summary judgment and order denying the Motion to Strike.

The case was reassigned on January 26, 2017. On November 2, 2017, the court denied the Motion to Strike and found after reviewing the pleadings that there was no issue of material fact regarding Count VI, Respondent's claim for breach of contract on the original guaranty. The court granted Respondent's motion for summary judgment as to Count VI only.

Thereafter, Respondent dismissed Counts I through V. On December 1, 2017, Respondent filed a Motion for Entry of Final Judgment in which Respondent waived its claim for interest, attorney's fees, and costs available under the original guaranties. Respondent requested that the $2,597,874 debt, which was the amount owed pursuant to the Deficiency Notes had they been delivered, be declared the final judgment amount. Gundaker objection to the motion. Appellants also filed motions to reconsider the partial summary judgment, which the court denied. Gundaker then filed another motion to transfer venue. On January 8, 2018, the court entered an order denying all pending motions and objections and setting for trial the remaining issues as to "interest, attorneys' fees, and court costs."

On February 2, 2018, Respondent filed a Motion for Entry of Final Judgment on Count VI citing Rule 74.04 and seeking final judgment on the amount of damages. Appellants did not respond to this motion. On March 15, 2018, the circuit court entered final judgment. This appeal follows.

**Standard of Review**

The standard of review for an appeal challenging the grant of a motion for summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Accordingly, we do not defer to the trial court's decision, but instead

5

use the same criteria that the trial court should have employed in initially deciding whether to grant Respondent's motion. *Barekman v. City of Republic*, 232 S.W.3d 675, 677 (Mo. App. 2007) (internal citations omitted). Under Rule 74.04, the court considers the motion, the response, the reply, and the sur-reply in making a ruling on motions for summary judgment. Rule 74.04(c)(6). We review the record in the light most favorable to the party against whom judgment was entered and accord that party the benefit of all inferences which may reasonably be drawn from the record. *Barekman*, 232 S.W.3d at 677. Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376. "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.*

### Points on Appeal

### Motions to Transfer – Hejna's Point I, Gundaker's Point V

Appellants argue that the circuit court erred in denying their motions to transfer venue because no defendant resided in Jackson County and the Deficiency Notes containing the forum selection clause were never delivered.

"To the extent that a court bases its venue ruling on factual matters and inferences, this court reviews the trial court's ruling under an abuse of discretion standard." *McCoy v. The Hershewe Law Firm*, P.C., 366 S.W.3d 586, 592 (Mo. App. 2012). "To the extent to which the venue decision is governed by the interpretation of a statute, the ruling is a question of law, and accordingly this court reviews the ruling to determine whether the trial court misinterpreted or misapplied the law." *Id.*

6

In disputing venue to the trial court, Appellants acknowledged that Deficiency Notes upon which Respondent's suit was founded contain a forum selection clause designating Jackson County, Missouri as venue for suit. The Deficiency Notes specifically provide "that any litigation initiated by Borrower or Lender in connection with this Note may be venued in either the state or federal courts located in Jackson County, Missouri[.]" Appellants further acknowledged that the Deficiency Notes were named in and were to be incorporated into the DIL entered into by Appellants with Respondent. Appellants contended, however, that delivery of the Deficiency Notes was contingent upon delivery of a "Developer Agreement" that was never created and, consequently, the DIL did not close. Appellants argued that, because Appellants never delivered the original notes, Respondent could not enforce the notes and, therefore, the forum selection clauses within the notes were also unenforceable. We disagree.

First Motion to Transfer Venue

"Missouri has long held that freely negotiated forum selection agreements are enforceable 'so long as doing so is neither unfair nor unreasonable.'" *GP&W Inc. v. Daibes Oil, LLC*, 497 S.W.3d 866, 869 (Mo. App. 2016) (quoting *High Life Sales Co. v. Brown-Forman Corp.*, 823 S.W.2d 493, 497 (Mo. banc 1992)). "The party resisting enforcement of the forum selection clause bears a heavy burden in convincing the court that he or she should not be held to the bargain because it is unfair or unreasonable." *GP&W Inc.*, 497 S.W.3d at 869. "A forum-selection clause is prima facie valid." *Hope's Windows, Inc. v. McClain*, 394 S.W.3d 478, 484 (Mo. App. 2013). "Where the enforceability of a forum-selection clause is at issue, the proper approach for a court to take is to enforce the clause specifically, unless the challenging party can clearly show that enforcement would be unreasonable and unjust, or that the clause is invalid for such reasons as fraud or overreaching." *Id.* (internal quotation marks and citations omitted). Whether a forum

7

selection clause that by its terms applies to contract actions also reaches other claims depends on whether resolution of the claims relates to interpretation of the contract. *Reed v. Reilly Company, LLC*, 534 S.W.3d 809, 811 (Mo. banc 2017) (internal quotation marks and citations omitted). "Missouri law recognizes and enforces incorporation clauses in contracts. Matters incorporated into a contract by reference are as much part of the contract as if they had been set out in the contract in haec verba." *Sabatino v. LaSalle Bank, N.A.*, 96 S.W.3d 113, 118 (Mo. App. 2003) (internal quotation marks and citations omitted).

All of Respondent's claims within its initial petition involved the DIL, which incorporated the Deficiency Notes. Appellants signed the DIL, therein agreeing to deliver the notes. When Respondent filed suit, Resolution of the claims of all parties necessarily required inquest into the terms and enforceability of the DIL and the Deficiency Notes. Appellants never argued that they did not agree to the forum selection clause or that venue in Jackson County was unfair or unreasonable; Appellants sole contention was that they agreed in the DIL to deliver the signed promissory notes (containing the forum clauses) but, because of an unmet contingency, never followed through with that agreement.

The DIL states that "simultaneously" with execution of the DIL, Appellants were to execute and deliver the Deficiency Notes. The DIL states that Appellants were to additionally provide at closing other executed original documents, including "Developer Agreement in the form attached hereto as Exhibit H." Nothing within the DIL references the contingency Appellants claim existed; Respondents disputed the existence of a contingency. Nonetheless, Appellants agreed to incorporate the Deficiency Notes containing the forum selection clause into the DIL and allow *any litigation in connection with the notes* to be venued in Jackson County. Resolution of the parties' dispute as to whether the DIL ever closed required interpretation of that contract.

8

Whether Respondents were entitled to enforce the Deficiency Notes under Section 400.3-301[5] as non-holders of the instruments does not impact enforcement of the forum selection clause. Pursuant to Section 400.3-104, a "negotiable instrument" that is a "note" is, with certain requirements, an unconditional promise to pay a fixed amount of money. Hence, the inability to enforce under Section 400.3-301 applies to enforcement of the promise to pay; an agreement as to venue for disputes regarding the Deficiency Notes is a separate issue.

The circuit court did not abuse its discretion in refusing to transfer venue after Appellants' first motion as allegations within Respondent's petition pertained to enforceability of the contract that contained the forum selection clause.

Second Motion to Transfer Venue

Prior to the court's first ruling on venue, Respondent amended the petition to include an alternate count based on Appellants' contentions that the DIL was unenforceable; Respondent's First Amended Petition alleged in Count VI that if the DIL was "undone," then Appellants were liable under their original guaranties. After Respondent amended its petition, Appellant Gundaker provided a supplemental statement in support of the requests to transfer venue. This statement continued to argue that the forum selection clause incorporated into the DIL was ineffective because Appellants never delivered the notes including that clause, and additionally argued that, under Count VI, venue was proper in St. Louis County due to a forum selection clause in the original guaranty.[6]

---

[5] All statutory citations are to the Revised Statutes of Missouri as updated through 2018, unless otherwise stated.

[6] Appellants never asked to sever the counts within Respondent's petition.

9

After Appellants' motions for change of venue were denied, the parties moved forward in Jackson County with Appellants seeking affirmative relief therein and conducting discovery. Appellants did not seek a writ of prohibition under Rule 97 alleging improper venue.[7] Respondents ultimately sought summary judgment on *all* counts within the petition -- the counts involving the Deficiency Notes under the DIL and the count involving the original guaranties. After the court granted partial summary judgment on the count involving the original guaranties, Respondent dismissed the other counts.

Appellant Gundaker then filed a second motion to transfer venue arguing that the guaranties sued upon in Count VI expressly provided that venue was proper only in St. Louis County, Missouri, and Respondent's dismissal of Counts I through V rendered the issue of the original guaranty "the only civil action between the parties." The court denied Gundaker's motion. Gundaker makes the same argument on appeal and contends the court erred in failing to transfer the case under Rule 51.045.

Respondents requested summary judgment on all counts. The Partial Summary Judgment provided, in pertinent part:

> [T]his Court … finds that there is no issue of material fact regarding Count VI, Plaintiffs claim for breach of contract on the original guaranty. Under the original guaranty, Defendants owe a total of $2,597,874 as of September 9, 2016. The Defendants are jointly and severally liable up to the limit of each Defendant's Guaranty, plus interest per the terms of the parties contract, attorney's fees and costs of this action related to Count VI to be determined by this Court. Therefore, Plaintiff's Motion is hereby GRANTED as to Count VI only.
>
> However, with regard to Counts I-V, there are material issues of fact and, as a result, said Motion is DENIED as to those Counts.

---

[7] Although Respondent argues Appellants waived their venue claim by proceeding and not pursuing a writ of prohibition, we note that Rule 51.045(a) states that, "If a timely motion to transfer venue is filed, the venue issue is not waived by any other action in the case." Respondent makes no claim that Appellants' motions were untimely.

Section 476.410 states that "[t]he division of a circuit court in which a case is filed laying venue in the wrong division or wrong circuit shall transfer the case to any division or circuit *in which it could have been brought.*" (Emphasis added). Here, the case was properly filed in Jackson County, as discussed above. Respondent's dismissal of the petition's additional counts to allow for final judgment did not alter the fact that venue was proper when the case was brought. Regardless, "[e]ven assuming the circuit court erred by [] failing to transfer venue …, an error does not warrant reversal on appeal unless the error results in prejudice." *Barron v. Abbott Laboratories, Inc.*, 529 S.W.3d 795, 798 (Mo. banc 2017). Appellant Gundaker, the only appellant making the second transfer request and appealing this specific issue, does not contend the court's decision resulted in prejudice and thereby fails to satisfy the prejudice requirement for reversal. *Id.*

Appellant Hejna's first and Appellant Gundaker's fifth points on appeal are denied.

**Affidavit of Mante Dzakuma – Hejna's Point II and Gundaker's Point I**

Hejna asserts in their second point on appeal, and Gundaker in his first, that the circuit court erred in denying Appellants' motions to strike the affidavit of Mante Dzakuma. Appellants assert that the Dzakuma affidavit was inadmissible for failure to comply with Rule 74.04(3) because Dzakuma had no personal knowledge of the chain of title that led to Respondent becoming holder of the note, and failed to set forth facts that would be admissible in evidence.

Rule 74.04(e) requires that supporting and opposing affidavits accompanying motions for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *See Scott v. Ranch Roy-L, Inc.*, 182 S.W.3d 627, 634-635 (Mo. App. 2005). "Facts set forth by affidavit or otherwise to support the motion are taken as true unless contradicted

11

by the non-movant's response to the summary judgment motion." *Juan v. Growe*, 547 S.W.3d 585, 591 (Mo. App. 2018). We give the non-movant the benefit of all reasonable inferences from the record. *Id.*

Mante Dzakuma states in the first page of his affidavit:

I, Mante Dzakuma, hereby declare upon my oath that the following statements are true:

1. I am an adult resident of California. I hold the position of Asset Manager with Sabal Financial Group, L.P. as agent for CADC/RADC VENTURE 2011-1, LLC.

2. My job responsibilities include working with our attorneys and assisting in litigation in which CADC/RADC VENTURE 2011-1, LLC, is involved.

3. As part of my job responsibilities, I am familiar with CADC/RADC VENTURE 2011-1, LLC'S assets including the loan at issue in this litigation.

4. I have personal knowledge of the facts contained in this affidavit by virtue of my employment at Sabal Financial Group, L.P., as agent for CADC/RADC VENTURE 2011-1, LLC and my review of business records.

Thereafter, Dzakuma attested to, among other things, various aspects of the loan, the chain of title, default of the loan, and the DIL.

Dzakuma's affidavit was not the only exhibit submitted by Respondents in support of their motion for summary judgment. Respondent's motion for summary judgment also included an affidavit of Appellant Michael Hejna wherein he acknowledges involvement in negotiations between Gunnett and CADC involving a promissory note Gunnett executed in favor of Premier Bank. Michael Hejna's affidavit does not question CADC's authority to negotiate the terms of the

original guaranty and attests that Michael Hejna delivered an executed DIL to CADC. He also attests to purposefully not delivering the signed Deficiency Notes referenced in the DIL.

Respondent also attached to the summary judgment motion interrogatories completed by Michael Hejna. Therein, Michael Hejna states that in 2012 Dzakuma and his superior were part of negotiations regarding the DIL, and that the DIL replaced the original loan and guarantees.

In opposition to Respondent's motion for summary judgment, Michael Hejna submitted an affidavit wherein he states that he was a member of Gunnett, which was a party to the loan with Premier Bank. He states he was the primary individual who handled matters with Premier Bank; he was also the primary individual who handled matters with Sabal and was advised in 2012 that Sabal was a successor in interest to Premier Bank. Michael Hejna's affidavit does not question Sabal's authority to act on Premier Bank's loan and Michael Hejna states that "discussions with Gunnett were primarily between me and Mante Dzakuma." Michael Hejna states that he signed the DIL. In the DIL, Appellants admit that CADC is the "successor by assignment to the Federal Deposit Insurance Corporation, receiver for Premier Bank." In Hejna's interrogatories, attached to Respondent's motion, Hejna states that the DIL replaced the original loan and guarantees. In Hejna's admissions, attached to Respondent's motion, Hejna admits that the signatures on the 2010 guaranty "appear to be those of Hejna Defendants." Also in Hejna's admissions, Hejna admits the DIL attached to the Petition was a true and accurate copy and that Hejna signed the DIL attached to the petition.

In answer to Respondent's First Amended Petition, Gundaker admits entering into certain agreements with Premier Bank. In response to Respondent's uncontroverted statement of facts, an affidavit of Gordon Gundaker was attached by Gundaker. Therein Gundaker states that, in 2012, Gundaker was involved in negotiations regarding "an alleged obligation of Gunnett to Premier

13

Bank" and that during said negotiations the DIL was discussed. Gundaker states that he executed the Gundaker Deficiency Note and delivered to Michael Hejna who was to deliver the same once the DIL was completed. In Response to Respondent's statement of facts, Gundaker attaches Exhibit G which has the DIL attached.

In reply to Appellants' suggestion that there was no proof CADC held the original note, Respondent submitted the affidavit of Michelle Masoner, "legal counsel for Plaintiff CADC/RADC VENTURE 2011-1, LLC, ACTING BY AND THROUGH Sabal Financial Group, L.P." Therein Masoner attests that the original note is located in her law firm's vault and is available for inspection. Masoner attached a copy of the original note along with copies of allonges showing the note was ultimately assigned to CADC. No one disputes on appeal that CADC held the original note at the time partial summary judgment was entered.

Appellants contend that the court erred in admitting the Dzakuma Affidavit because Dzakuma's recitation of chain of title did not come from Dzakuma's personal knowledge because Dzakuma was never an employee of Premier Bank, the FDIC, or of CADC. Gundaker Appellants state that, without the Dzakuma Affidavit, "there is no evidence to support the trial court's order granting partial summary judgment." Yet, documentation submitted by appellants themselves shows at the very least that Dzakuma, an agent for CADC, had personal knowledge of CADC's status as note holder at the time the DIL was negotiated. Dzakuma averred that he had personal knowledge of the facts contained within his affidavit and Appellants' documentation supports that Dzakuma had personal knowledge of the details of the DIL. Approximately eight of the nine pages of Dzakuma's affidavit reference the DIL. As all parties verified that Dzakuma was involved in negotiation of that agreement, the court did not abuse its discretion in allowing those portions of the Dzakuma affidavit.

14

With regard to the remaining portion of Dzakuma's affidavit reciting chain of title, we need not consider whether the court erred in admitting those statements because Appellants cannot prove prejudice. Although Appellants argue Dzakuma's affidavit was the only evidence before the court allowing the court to conclude CADC had authority to enforce the original guaranty,[8] the affidavit of Michelle Masoner was also before the court. This affidavit states that CADC held the original note. Appellants do not dispute that CADC possessed the original note or that the note had been endorsed in blank, but appear to argue that the court could not have reached the conclusion that Respondent was the "holder" of the note, such that the guaranties could be enforced, without the Dzakuma affidavit. We disagree.

"When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed." § 400.3-205(b).

> Missouri has adopted the Uniform Commercial Code (UCC), which governs commercial transactions. *See* Section 400, *et seq.* 'Application of the UCC is straightforward regarding [the] question of who may enforce the Note.' *U.S. Bank Nat'l Ass'n v. Burns*, 406 S.W.3d 495, 497 (Mo. App. 2013). Under Section 400.3-301, the holder of a negotiable instrument is entitled to enforce it. *Id.* 'A holder is one (1) who possesses the instrument, and (2) to whom the instrument is made payable.' *Id.*; Section 400.1-201(20). An instrument may be endorsed in blank and such instrument then becomes payable to its bearer. Sections 400.3-205(a) and (b). A party that possesses a negotiable instrument containing a blank endorsement that does not identify the person to whom it is payable has standing to enforce the note[.]

*Deutsche Bank National Trust Company v. Vaughn*, 524 S.W.3d 193, 198 (Mo. App. 2017). A personal guaranty follows assignment of a note. *Federal Nat. Morg. Ass'n v. Bostwick*, 414 S.W.3d 521, 526 (Mo. App. 2013).

---

[8] Appellant Hejna asserts the "Dzakuma affidavit was Plaintiff's only proof of its allegation in paragraph 47 of its motion that it is the holder of the original loan documents." Hejna argues that, "[n]one of the assignment documents, however, were submitted to the court (other than the ultimate assignment to Cygnus), with Plaintiff and the court instead relying on Mr. Dzakuma's legal opinion."

Given the Masoner affidavit showing CADC as holders of the original note, even if Appellants could prove Dzakuma's statements regarding chain of title were improperly admitted, Appellants cannot show admission of those statements resulted in prejudice.

Hejna's second point on appeal, and Gundaker's first, is denied.

**Standing – Hejna's Point III and Gundaker's Point III**

In Hejna's third point on appeal and part of Gundaker's third, the Appellants contend CADC did not properly plead standing. Appellants argue that, although CADC purported to be a "holder" of a promissory note with standing to sue on the underlying guaranty, Respondent makes no attempt to address *CACH, LLC v. Askew*, 358 S.W.3d 58 (Mo. banc 2012). *CACH* held that, a debt collector attempting to collect on a debtor's outstanding credit card account was required to show proof of assignment of the right to collect the debt to establish standing. *Id*. at 62. Appellants argue that CADC failed to establish itself as "holder" of the original notes because the original notes were made payable to Premier Bank and not CADC.

"A party has standing to sue when it has an interest in the subject matter of the suit that gives it a right to recovery, if validated." *Portfolio Recovery Assocs., LLC v. Schultz*, 449 S.W.3d 427, 434 (Mo. App. 2014). "Lack of standing cannot be waived and may be considered by the court *sua sponte*." *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 622 (Mo. App. 2009).

Respondent's Consolidated Memorandum in Reply in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motions to Strike the Affidavit of Mante Dzakuma included Exhibit B, an affidavit of Respondent's attorney, Michelle Masoner. Therein she states that the original note was in CADC's possession and was physically located in a vault at Masoner's law firm. Attached to Masoner's affidavit was a copy of that note and two allonges; one allonge showed that the January 15, 2010 promissory note payable by Gunnett to Premier

16

Bank was assigned by the FDIC, in its capacity as receiver for Premier Bank, to CADC. The other allonge was endorsed in blank by CADC. "An 'allonge' is a piece of paper annexed to a negotiable instrument or promissory note on which to write endorsements for which there is no room on the instrument itself." *Federal Nat. Mortg. Ass'n v. Conover*, 428 S.W.3d 661, 664 n.3 (Mo App. 2014) (internal quotation marks and citations omitted).

Section 400.3-301 provides that a "Person entitled to enforce" includes "the holder of the instrument." Exhibit B to Respondent's reply memorandum showed that CADC possessed the note and that the allonges made the note payable to CADC specifically. As "holder," CADC was entitled to enforce the note and accompanying guaranties. "A transfer of the principal obligation is held to operate as an assignment of the guaranty[.]" *American First Fedral, Inc. v. Battlefield Center, L.P.*, 282 S.W.3d 1, 5 (Mo. App. 2009).

Appellants' reliance on *CACH* is misplaced; *CACH* involved assignment of the right to collect credit card debt; it did not involve a promissory note or other negotiable instrument governed by Article 3 of the UCC. Here, Gunnett signed the original note and the Guarantors signed the guaranties. Therein the Guarantors agreed that the note and guaranties could be assigned, with Guarantors indebted to the lender as well as the lender's successors.

Appellants additionally contend the allonge pages should not have been considered by the court because they were not part of the promissory notes attached to the petition, were not part of the Motion for Summary Judgment, were not part of the Statement of Undisputed Facts, and were not part of the Dzakuma Affidavit. Appellants contend that the existence of the allonges was alleged only after Appellants filed responses to the Motion for Summary Judgment and Masoner has no personal knowledge regarding CADC's acquisition of the notes.

17

Rule 74.04(c)(3) allows for "Replies in Support of Motions for Summary Judgment" after Responses to such motions are served. This rule provides that a movant for summary judgment may respond to the adverse party's additional material facts that remain in dispute and file a statement of additional material facts as to which movant claims there is no genuine issue. "Attached to the supplemental statement shall be a copy of any additional discovery, exhibits or affidavits on which the supplemental statement relies." *Id.* It was within this rule Respondent filed Masoner's affidavit and the allonges. Appellants never objected to Respondent's Reply.

Although Appellants acknowledge that Rule 74.04(c)(3) "provides the procedure whereby a movant may submit additional evidence in support of its motion," Appellants argue that the court was to consider nothing beyond Appellants' response to Respondent's motion for summary judgment. Yet, the case law upon which Appellants rely interprets a prior version of Rule 74.04, wherein replies and sur-replies were not provided for. *See New Prime, Inc. v. Professional Logistics Management Co., Inc.*, 28 S.W.3d 898, 904 (Mo. App. 2000); Missouri Rules of Civil Procedure (2000).[9] Rule 74.04 has since been amended to allow replies and sur-replies and Rule 74.04(c)(6) in the Missouri Rules of Civil Procedure (2018), states that "[a]fter the response, reply and any sur-reply have been filed or the deadlines therefor have expired, the court shall decide the motion."

The circuit court did not err in concluding Respondents had standing to bring the action as holder of the original note.

Appellants' third points on appeal (as related to this issue) are denied.

---

[9] This court stated in *New Prime* that the plain meaning of Rule 74.04(c)(3) requires that the trial court, in deciding whether to grant a motion for summary judgment, should consider only the motion and the response, and that a trial court's decision on a motion for summary judgment should not be based on anything filed after the non-moving party files its response. *New Prime*, 28 S.W.3d at 904.

**Validity of the DIL – Hejna's Point IV and Gundaker's Point III**

In Hejna's fourth point on appeal and part of Gundaker's third, Appellants argue the trial court erred in entering summary judgment on Count VI because the Judgment did not conform to the pleadings. Appellants contend the court awarded damages on a claim that was expressly contingent upon the DIL being invalidated, and the DIL was not invalidated; Appellants claim that, the nature of Respondent's pleadings required the court make an express finding that the DIL was invalid before ruling in Respondent's favor on Count VI. Appellants' further claim that the DIL released Appellants from their obligations under the original guaranty.

Count VI in Respondent's First Amended Petition incorporated by reference all foregoing paragraphs. Incorporated within those paragraphs were references to the DIL, including the DIL's provision for revival of the Defendants' liability under the original loan if the DIL, or any related documents, were subsequently invalidated. Count VI further alleged that, "In an alternative count to Counts I through IV herein, and in the event the [DIL] is undone, then under such circumstances, the Defendants remain obligated under their original Guaranty."

We disagree that Respondent's pleadings required the court to completely invalidate the DIL before entering Judgment in favor of Respondents on Count VI. Appellants admitted to executing the DIL, complying with certain terms therein, partially performing, and enjoying some of its benefits. Appellants also admitted to failing to comply with certain terms, but alleged they did so with good cause. Consequently, the court rightly determined that fact issues still existed under the counts involving the DIL which precluded summary judgment on those counts. The court would have had to delve into those fact issues before determining the DIL invalid.

Appellants also admitted, however, to defaulting under the original agreement and executing the DIL to avoid the consequences of that default. By arguing the DIL never closed,

19

Appellants essentially agreed to resurrection of the original note and guaranties under Count VI. Given the record, it was not necessary for the court to declare the DIL invalid before determining Appellants' liability under the original guaranties. The record shows there were no material facts in dispute as to Appellants' liability under the original guaranties where Appellants admitted to executing the DIL after defaulting on the original guaranties, and then contended the DIL never closed; by arguing the DIL never closed, Appellants could not also claim protection under the DIL's release provision regarding the original guaranties.

Hejna's fourth point on appeal, and Gundaker's third point (as related to this issue), are denied.

**Additional Evidence - Hejna's Fifth Point and Gundaker's Third and Fourth**

In Hejna's fifth point on appeal, part of Gundaker's third, and Gundaker's fourth, Appellants contend the trial court erred in entering summary judgment on Count VI because Respondent improperly attached new evidence to its Motion for Entry of Final Judgment. Appellants suggest that Respondent's Motion for Entry of Final Judgment on Count VI was supplemental to its previous motion, and the documents attached to the motion were therefore unauthorized.

On December 1, 2017, Respondent filed a Motion for Entry of Final Judgment, not pursuant to Rule 74.04, wherein Respondent waived its claim for interest and attorneys' fees and costs under the original guaranty. Appellant Gundaker objected to this motion and Appellants filed various other motions. On January 8, 2018, the circuit court entered an order denying all pending motions and objections and setting for trial all issues remaining.

On February 2, 2018, Respondent filed a Motion for Entry of Final Judgment on the Amount of Damages citing Rule 74.04, therein providing a statement of uncontroverted material

facts regarding damages and attaching two affidavits as allowed by Rule 74.04(c)(1). This was a stand-alone motion. Appellants filed no response, and the court entered Final Judgment on March 15, 2018.

> Rule 74.04(c)(2) requires a non-movant responding to a summary judgment motion to 'set forth each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements.' The rule also requires the non-movant to support each denial 'with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial.' Rule 74.04(c)(2). These requirements are mandatory. *Cnty. Asphalt Paving, Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 708 (Mo. App. 2007). A response that does not comply with Rule 74.04(c)(2)'s requirements 'with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph.' Rule 74.04(c)(2).

*Jordan v. Peet*, 409 S.W.3d 553, 558 (Mo. App. 2013).

The affidavits attached to Respondent's motion were filed under Rule 74.04 and Appellants never challenged their propriety. By filing no response to Respondent's motion, Appellants admitted the facts contained within the motion and waived any claim on appeal that the court improperly relied on those facts. As those facts involved the calculation of damages, Appellants waived any claim that the court improperly calculated damages.

Hejna's Fifth point and Gundaker's third and fourth points (as related to this issue) are denied.

## Gundaker's Liability – Gundaker's Point II

Gundaker asserts in his second point on appeal that the circuit court erred in granting summary judgment, contending Respondent failed to show Gundaker executed and delivered a guaranty, that credit was extended in reliance upon a guaranty, or that amounts remain due under an enforceable obligation.

Respondent's First Amended Petition alleged that Gundaker, individually and as trustee, executed and delivered guaranties which promised payment of Gunnett's indebtedness up to a specified amount. Respondent attached and incorporated signed copies of all guaranties to the First Amended Petition. One guaranty, Exhibit J, was signed by Gordon Gundaker individually. Another, Exhibit K, was signed by Gordon Gundaker in his capacity as trustee for the Gordon A. Gundaker, Jr. Revocable Trust. Both were dated December 6, 2006. Exhibit L represented an "Amended and Restated Continuing Unconditional Limited Guaranty" signed by Gordon Gundaker individually and as trustee on March 22, 2010. The DIL, signed by all Guarantors, including Gundaker individually and as trustee, was also attached to Respondent's Petition.

Pursuant to Section 509.240, when any claim is founded upon a written instrument with a copy attached to the pleading, "the execution of such instrument shall be deemed confessed unless the party charged to have executed the same shall specifically deny the execution thereof." In answer to Respondent's petition, Gundaker never denied executing the guaranties. To the contrary, Gundaker admitted entering into agreements with Premier Bank and other entities but alleged "that the terms and conditions of any binding agreements supersede any summary description thereof in the Petition and [Gundaker] reserves the right to review the originals of any such agreements." He denied the allegations until "the original of any such agreement is provided." Gundaker does not dispute that originals were available for inspection. Gundaker presented no evidence controverting his execution and delivery of the guaranties. Gundaker also admitted executing the DIL which references the indebtedness under the guaranties.

"In a suit on a promissory note a prima facie case is made when the note, admittedly signed by the makers, is introduced and evidence follows demonstrating the note is unpaid or that a balance is due and owing." *Bank of Kirksville v. Small*, 742 S.W.2d 127, 130 (Mo. banc 1987).

22

Here, although Gundaker suggests he never admitted executing a guaranty, under Section 509.240, he admitted execution by making no specific denial. The guaranties incorporate the indebtedness evidenced by the note. The original guaranties and note show that credit was extended in reliance on the guaranties serving as collateral for the loan. It was uncontroverted that the note remained unpaid.

Gundaker's second point on appeal is denied.

## Conclusion

We conclude that the circuit court did not err, 1) in denying Appellants' motions to transfer venue as resolution of the claims of all parties required inquest into the terms and enforceability of the DIL and incorporated Deficiency Notes, which contained forum selection clauses designating venue for "any litigation" in connection with the notes; 2) in denying Appellants' motions to strike Mante Dzakuma's affidavit as the record shows Dzakuma had personal knowledge of matters attested to in his affidavit and, even if Appellants could prove the affidavit was improperly admitted, Appellants fail to prove prejudice; 3) in finding Respondent had standing to bring the action as holder of the original note; 4) in entering summary judgment on Count VI without first finding the DIL invalid as such was not required to determine that no material facts were in dispute and Respondent was entitled to judgment as a matter of law; 5) in accepting affidavits allowed by Rule 74.04(c)(1) along with Respondent's Rule 74.04 Motion for Entry of Final Judgment, and; 6) in entering summary judgment on Count VI against Appellant Gundaker as the record showed Gundaker executed and delivered guaranties, that credit was extended in reliance, and that amounts remained due under an enforceable obligation.

We affirm the circuit court's judgment.

_____
Anthony Rex Gabbert, Judge

All concur.